**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Barry T. EAGAN, Defendant–Appellant.**

**No. 90–4158.**

United States Court of Appeals,
Tenth Circuit.

May 28, 1992.

Paul M. Warner, U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Mary C. Corporon of Corporon & Williams, P.C., Salt Lake City, Utah, for defendant-appellant.

Before MOORE, Circuit Judge, and ALDISERT * and McWILLIAMS, Senior Circuit Judges.

---

* The Honorable Ruggero J. Aldisert, Senior Judge, U.S. Court of Appeals, Third Circuit, sit-ting by designation.

McWILLIAMS, Senior Circuit Judge.

In a four-count superseding indictment, Barry T. Eagan was charged in the first count with knowingly manufacturing on October 5, 1989, methylenedioxyampheta-mine (MDA), a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In a second count, Eagan was charged with unlawfully manufacturing on October 5, 1989, methylenedioxymeth-amphetamine (MDMA), a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In a third count, Eagan was charged with knowingly distrib-uting on October 5, 1989, methylenediox-yamphetamine (MDA), a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). In a fourth and last count, Eagan was charged with using or carrying a firearm, a .22 caliber handgun, during and in relation to the drug trafficking crime charged in count three of the superseding indictment, in violation of 18 U.S.C. § 924(c).

A jury convicted Eagan on counts one, two and three of the superseding indict-ment, but acquitted him on count four. The district court sentenced Eagan to in-carceration for 36 months on each of the three counts on which he was convicted, such sentences to be served concurrently, and not consecutively. Eagan appeals the sentences thus imposed.

On appeal, Eagan posits four issues: (1) The district court erred in failing to sup-press his confession; (2) the guilty verdicts on the first three counts of the superseding indictment are not supported by the evi-dence, and should be set aside; (3) the district court erred in allowing certain government witnesses to testify that the gun found on Eagan at the time of his arrest carried a "silencer"; and (4) the district court erred in failing to sentence Eagan in conformity with the Sentencing Guidelines.

In view of the nature of the matters raised on appeal, the background facts need not be recounted in great detail. It is

sufficient to note that Eagan grew up in Salt Lake City, Utah and later obtained a bachelor's degree in chemistry at Princeton University. At the time of his arrest on October 5, 1989, Eagan was employed as a chemist at a local commercial laboratory in Murray, Utah. Eagan used his position at the laboratory to organize and conduct the manufacturing of both MDA and MDMA, known on the street as "ecstasy." Initially, he manufactured the drugs after working hours at his place of employment and later on, with the help of unwitting co-workers, during business hours. In the early development of his business enterprise Eagan ordered the necessary precursors by using company invoices. Later on, he began to manufacture the drugs from scratch. Eagan would then sell the MDA and MDMA in order to support his own cocaine habit. The sale of MDA on October 5, 1989, was a controlled sale to a police informant of 22 grams of MDA for $2,200.

The central issue in this case is Eagan's claim that as of the date of the offenses with which he was charged, and convicted, he was legally insane because of a severe mental disease or defect, and that the jury's verdicts finding him guilty on the first three counts in the indictment should not be permitted to stand. We do not agree with this argument.

18 U.S.C. § 17 provides as follows:

### § 17. Insanity defense

(a) **Affirmative defense.**—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(b) **Burden of proof.**—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

■ At trial, Eagan called two medical doctors and a licensed clinical social worker who testified at length about his mental condition. The prosecution called as its witness a court-appointed doctor who had examined Eagan. We agree that Eagan undoubtedly did have some mental problems. There was testimony that on the date of the alleged offenses, and before, he was suffering from bipolar disorder, also known as manic depressive disorder. A bipolar manic depressive was described as one who experiences, on the one hand, periods of extreme mania, and, on the other hand, periods of extreme depression. Such mood swings generally occur cyclically, to varying degrees of severity, which may or may not be accompanied by psychosis. All agreed that Eagan suffered from bipolar disorder during the period he manufactured the drugs and both during and after his arrest. Each described Eagan's erratic behavior, which included hyperkinetic activity, pressured speech, suicidal crises, and complications caused by substance abuse. Opinions as to the severity of Eagan's condition at any particular time, however, varied. Drs. Culbertson and Draper described Eagan's behavior along a spectrum of severity from outwardly normal to severely impaired, and perhaps on occasion sufficiently removed from reality to be considered psychotic. However, Dr. Moench, the court-appointed doctor, described Eagan's bipolar disorder as moderate, and that it was "probably most of the time less than that." Lay witnesses also testified, *inter alia*, that Eagan seemed normal and performed his assigned duties at his place of employment in a more than satisfactory manner, in fact receiving two job promotions to supervisory positions within 18 months of employment.

All things considered, our study of the record convinces us that the issue of whether Eagan was legally insane on the date of the alleged offenses was an issue of fact to be resolved by the jury, and that the jury's verdict that Eagan was guilty as charged on the first three counts of the indictment is supported by substantial evidence. Under 18 U.S.C. § 17(a), Eagan had the burden of proving the defense of insanity by clear and convincing evidence. *See United States v. Crews*, 781 F.2d 826, 830 n. 2 (10th Cir.1986). By its verdict the jury

found, in effect, that Eagan did not meet this burden. The record supports the jury's verdict.

Prior to trial, Eagan moved to suppress the use at trial of incriminating statements made by him to the arresting officers shortly after his arrest. As ground for the motion, Eagan claimed that he was coerced into making the confession, and he also asserted that at the time he made the statements he lacked the requisite mental capacity to waive his Miranda rights.

At the hearing on the motion to suppress no medical doctors were called to testify as to Eagan's mental condition, although Eagan himself did testify thereto. In any event, the district court denied the motion to suppress, and Eagan argues that this ruling constitutes reversible error.

■ On appeal, the only reason advanced for reversing the district court's order refusing to suppress Eagan's statement to the authorities is his alleged lack of mental capacity to waive his Miranda rights. As indicated, at the hearing on Eagan's motion to suppress, there was no medical testimony concerning Eagan's alleged diminished mental capacity. Eagan admitted that he was given Miranda warnings, and that, when part way through the questioning he indicated he wanted to see a lawyer, the interrogation was terminated. We perceive no error in the district court's denial of Eagan's motion to suppress. There was little, or nothing, of an evidentiary nature before the district court to indicate that Eagan lacked the mental capacity to waive his *Miranda* rights. Further, our holding that the jury's verdicts are supported by the evidence, i.e., Eagan did not sustain his burden of proving insanity by clear and convincing evidence undercuts his claim that he lacked the mental capacity to waive his Miranda rights.

■ Initially, Eagan was charged with using and carrying a handgun with a firearm "silencer" in connection with a drug trafficking offense. The government later moved to strike the reference to a "silencer." The superseding indictment made no mention of any "silencer." Prior to trial, counsel for Eagan moved to suppress any reference at trial to a "silencer," apparently on the basis that the very word "silencer" had a sinister connotation and would necessarily prejudice the jury against him. The motion was denied, and counsel asserts such denial constitutes reversible error.

As indicated, Eagan suggests that he was severely prejudiced by the fact that witnesses were allowed to testify that a loaded handgun found in a bag he was carrying at the time of the controlled sale on October 5, 1989, bore a "silencer." In that connection, both Eagan and the arresting officers apparently thought the pipe was a "silencer." However, it was later discovered that what was believed to be a "silencer" was not in fact a "silencer," and actually increased the noise by .5 decibels! Be that as it may, the jury was advised of all this and was fully aware that the pipe on the handgun was not a "silencer" and that it actually increased the noise decibel. We perceive no prejudice to Eagan. As indicated, the jury acquitted Eagan on the charge of "using and carrying" a gun, so the use of the word "silencer" did not so prejudice the jury that it could not acquit Eagan on the fourth count. Such being the case, it is hard to believe that the jury convicted Eagan on the first three counts of the superseding indictment because of reference by witnesses to the word "silencer." Indeed, at trial, Eagan, in effect, admitted all the essential elements of the first three counts of the indictment, and his only defense thereto was that of insanity.

As indicated, the district court sentenced Eagan to imprisonment for 36 months on each of the three counts of which he was convicted by the jury, said sentences to be served concurrently. Sentence was imposed under the Sentencing Guidelines, and on appeal counsel asserts that the district court misunderstood and incorrectly applied the guidelines.

On September 20 and 21, 1990, the district court held hearings on various objections made by the parties to the presentence report filed by the Probation Department. At the conclusion of the hearing on September 21, 1990, the district court sentenced Eagan to imprisonment for 36

months on each of the three counts of which he was convicted, said sentences to be served concurrently.

On October 29, 1990, the district judge, apparently reconfirming his earlier findings and conclusions, as well as reaffirming the sentences previously imposed, entered the following written order:

This matter came before the court on September 20, 1990, on issues raised in the Pre–Sentence Report, the Position of the United States with Respect to Sentencing Factors, and the Position of the Defendant with Respect to Sentencing Factors. No witnesses were called. The court announced its determination as to approximate quantities at that time. This matter came before the court on September 21, 1990, for imposition of sentence. Sentencing factors were again examined and sentence was imposed. Thereafter, counsel for defendant submitted a proposed form of order to which counsel for the United States filed an objection. The court, after reconsideration of record, the proposed order and objections, makes the following findings and order relative thereto:

1. The Pre–Sentence Report proposes that 1,803.13 grams is the correct quantity of controlled substance the court should approximate as the production potential of the defendant's drug manufacturing laboratory.

2. The United States proposes that 6,000 grams is the correct quantity of controlled substance the court should approximate as the production potential of defendant's drug manufacturing laboratory. No witnesses were called.

3. Defendant asserts that the maximum quantity of the controlled substance capable of being produced by the chemicals recovered from defendant's laboratory site is 275 grams.

4. The court notes that 21 U.S.C. §§ 841 and 846 prohibit certain acts regarding the manufacturing, distribution, dispensation, or possession of a controlled substance. The precursor chemicals found in defendant's possession are not controlled substances under the statute, and possession of them is not unlawful.

5. Based upon these findings and the record before it, and the acknowledgement and acquiescence of defendant, the court approximates the quantity of the production potential of defendant's laboratory to be 275 grams of the controlled substance, MDA, and further finds that this quantity of MDA should be used for purposes of calculating defendant's base offense level.

6. The court finds that the remainder of the calculations, in terms of enhancements and credits to the base offense level, contained in the Pre–Sentence Report as modified are accurate.

7. The court finds that the criminal history category for defendant, as set forth in the Pre–Sentence Report, is accurate.

8. Based upon the foregoing calculations, the court finds that defendant's offense level is 16 (quantity), plus 2 (firearm), plus 2 (special skill), minus 2 (accepting responsibility), resulting in a total offense level of 18, and that his criminal history category is "I", justifying a guideline range for defendant's sentence of 27 to 33 months. However, because of defendant's special skill, the large quantities of precursors in his possession and control, the laboratory potential and the time period involved, and the other reasons set forth at time of hearing, the court elects to depart upward to a sentence of 36 months.

In determining an individual's base offense level, under the Guidelines, the quantity of controlled substances involved is an important factor. As we understand the record, the district court accepted Eagan's calculation that only 275 grams of controlled substance were involved in his case, and, in so doing, the district court rejected the government's contention that 6,000 grams of controlled substance was in reality involved, and also rejected the recommendation in the pre-sentence report that 1,803.13 grams of controlled substance was involved.

The figure of 275 grams, recommended by defense counsel and accepted by the court, included 22.76 grams of MDA which Eagan "sold" the undercover agent on October 5, 1989 (count 3) and also included .56 grams of MDA found on Eagan's person at the time of his arrest at the scene of the controlled sale. The balance of the 275 gram figure, i.e., about 252 grams, "approximates the quantity of the production potential of defendant's laboratory...." In other words, if we read the record correctly, there was no MDA or MDMA in the finished form found at the laboratory site, other than trace amounts detected in a waste bottle. However, based on the quantity of precursors found at the laboratory scene, it was estimated that such would produce approximately 252 grams of the so-called "finished product."

As concerns his base offense level, Eagan makes no objection to the district court's determination that his initial base offense level, based on the quantity of drugs involved, i.e., 275 grams converted to 13.75 grams of heroin, is 16. U.S.S.G. § 2D1.1(c)(14), effective November 1, 1989. However, Eagan does object to the increase of his base offense level by 2 levels (up to 18) for possession of a firearm. He does not object to the district court's increasing his base offense level by 2 levels (up to 20) for so-called special skills, nor does he object to a 2–point reduction (down to 18) for his acceptance of responsibility.

As indicated, Eagan asserts that the district court erred in increasing his base offense level by 2 levels for possessing a firearm. U.S.S.G. § 2D1.1(b)(1) does provide for an increase of a base offense level by 2 levels "[i]f a dangerous weapon (including a firearm) was possessed during commission of the offense...."

■ Eagan argues that since he was acquitted by the jury on count four of the indictment charging him with "using and carrying" a weapon during a drug trafficking offense, it was improper for the district court to increase his base offense level by 2 levels for possessing a weapon during the commission of the offense. We disagree. See *United States v. Coleman*, 947 F.2d 1424, 1428–29 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992), where we held that an acquittal on a charge of using or carrying a firearm during and in relation to a drug trafficking charge did *not* preclude enhancement of a defendant's base offense level for possessing a firearm during the commission of a drug offense. As indicated, there is no dispute that Eagan had a loaded handgun in his bag when he sold MDA to a government informant. Under the circumstances, the district court did not err in increasing Eagan's base offense level by 2 levels for possessing a firearm during the controlled sale to the undercover agent, and the district court's determination that Eagan's final base offense level was 18 is correct.

A person with a base offense level of 18, which was the district court's determination of Eagan's final base offense level, and a criminal history category of I, which was Eagan's criminal history category, is subject to a sentencing guideline range of 27 to 33 months. U.S.S.G. Sentencing Table, effective November 1, 1989. However, as indicated, the district court determined to make an upward departure from the guideline range and sentenced Eagan to 36 months imprisonment. The district court indicated that it made this upward departure because of Eagan's "special skills" and because of the large quantities of precursors in his possession. Counsel argues that under the circumstances neither of these matters justifies an upward departure for the sentencing guideline range of 27 to 33 months imprisonment.

■ U.S.S.G. § 3B1.3 does permit the enhancement of a defendant's base offense level by 2 levels if "the defendant ... used a special skill, in a manner that significantly facilitated the commission ... of the offense...." As indicated, the district court in fixing Eagan's base offense level did add 2 levels because of Eagan's "special skills," i.e., a chemistry degree from Princeton with resultant special skills as a chemist. As above indicated, counsel does not object to the enhancement of his base offense level by two levels because of Ea-

gan's special skills, but he does object to an upward departure from the sentencing range based, again, on "special skills." We agree. 18 U.S.C. § 3553(b) provides that a district court shall impose a sentence within the sentencing guideline range unless it finds that there exists aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. "Special skills" were factored into the determination of Eagan's base offense level, and such may not be used a "second time" to justify an upward departure. *See United States v. Zamarripa*, 905 F.2d 337, 341 (10th Cir.1990) (abuse of position of trust used to increase base offense level could not also serve as basis for upward departure).

 Counsel also argues that, under the circumstances, the second reason given for an upward departure, i.e., possession of precursors, is improper, since the district judge, in fixing the amount of controlled substances to be considered in determining Eagan's base offense level, estimated the "potential" of Eagan's laboratory by taking into consideration the amount of precursors then on hand. Counsel suggests that in determining Eagan's base offense level, the district court considered the quantity of precursors on hand in order to determine the quantity of drugs involved, and that it would be improper thereafter to make an upward departure from the sentencing guideline range based on the same possession of precursors. Again we agree. An upward departure from the applicable sentencing range on a factor that has already been considered in establishing the guideline range is an "incorrect application" of the guidelines. *Williams v. United States*, — U.S. —, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

Counsel also argues that the district court erred in refusing his request that there be a downward departure from the sentencing guideline range based on Eagan's diminished mental condition. U.S.S.G. § 5K2.13 does state that, under certain circumstances, "a lower sentence may be warranted" when the defendant is,

*inter alia*, "suffering from significantly reduced mental capacity." Couched in discretionary rather than mandatory language, § 5K2.13 permits the sentencing judge to exercise discretion in departing downward for this reason. In this connection, the district judge observed that despite Eagan's bipolar disorder he felt that Eagan nonetheless fully understood what it was he was doing.

 Where a district court has discretion to depart downward, and explicitly declines to exercise that discretion, 18 U.S.C. § 3742 does not grant appellate jurisdiction to review that discretionary refusal to depart downward. *See United States v. Munoz*, 946 F.2d 729 (10th Cir.1991); *United States v. Spedalieri*, 910 F.2d 707, 710–11 (10th Cir.1990).

Eagan's several convictions are affirmed. The case is remanded to vacate the sentences imposed and for resentencing in accord with the views expressed herein.