William Henry HANCE, Petitioner–
Appellant,

v.

Walter ZANT, Warden, Georgia Diagnostic & Classification Center, Respondent–Appellee.

No. 91–8448.

United States Court of Appeals,
Eleventh Circuit.

Jan. 6, 1993.

Rehearing and Rehearing En Banc
Denied March 11, 1993.

Thomas P. Lenzer, Lenzer & Lenzer, Norcross, GA, for petitioner-appellant.

Mary Beth Westmoreland, Senior Asst. Atty. Gen., Atlanta, GA, for respondent-appellee.

Before ANDERSON, COX and BIRCH, Circuit Judges.

ANDERSON, Circuit Judge:

Petitioner, William Henry Hance, who was convicted of murder in state court and sentenced to death, appeals from the district court's denial of his petition for habeas corpus. For the reasons that follow, we affirm the decision of the district court.

## BACKGROUND

### A. Procedural History

William Henry Hance was convicted of attempted theft by extortion and the murder of Gail Jackson; he was sentenced to death for the murder. Hance's conviction and sentence of death were affirmed by the Georgia Supreme Court. *Hance v. State*, 245 Ga. 856, 268 S.E.2d 339, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 611 (1980). Hance unsuccessfully sought state habeas corpus relief in the Superior Court of Butts County, Georgia; the Georgia Supreme Court denied his Certificate of Probable Cause to Appeal. The United States Supreme Court denied certiorari. *Hance v. Zant*, 456 U.S. 965, 102 S.Ct. 2046, 72 L.Ed.2d 491 (1982).

Hance then filed a petition for habeas corpus in the United States District Court for the Middle District of Georgia. The district court denied the petition, and Hance appealed to this court. This court affirmed Hance's conviction but granted sentence stage relief on the grounds that the prosecutor's closing argument rendered the sentencing proceeding fundamentally unfair, and that two jurors were improperly excluded in violation of *Witherspoon v.*

*Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). A new sentencing trial was ordered. *Hance v. Zant*, 696 F.2d 940 (11th Cir.), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983).

At his second trial, Hance was again sentenced to death. The Georgia Supreme Court affirmed the death sentence in *Hance v. State*, 254 Ga. 575, 332 S.E.2d 287, *cert. denied*, 474 U.S. 1038, 106 S.Ct. 606, 88 L.Ed.2d 584 (1985). Hance filed a petition for habeas corpus in the Superior Court of Butts County, which the court denied after holding an evidentiary hearing. The Georgia Supreme Court affirmed the denial of habeas corpus in *Hance v. Kemp*, 258 Ga. 649, 373 S.E.2d 184 (1988), *cert. denied*, 490 U.S. 1012, 109 S.Ct. 1658, 104 L.Ed.2d 172 (1989). Hance then filed a petition for habeas corpus in the District Court for the Middle District of Georgia; the district court denied the petition without holding an evidentiary hearing. This appeal followed.

### B. The Relevant Facts

On February 27, 1978, Gail Jackson disappeared. The car she had been driving was discovered on March 5, 1978, at the Sand Hill Bar and Grill in Columbus, Georgia. Between March 3, 1978, and April 5, 1978, Chief Curtis E. McClung of the Columbus Police Department received a series of letters written on United States Army stationery from an individual who identified himself as "Chairman of the Forces of Evil." The subjects of the letters were Ms. Jackson and Irene Thirkield, both black women.[1] The writer threatened them with death if the Columbus, Georgia "stocking strangler" was not apprehended, or, in the alternative, if the "Forces of Evil" did not receive $10,000.

A letter received on March 27, 1978, stated that one of Ms. Jackson's arms would be broken and that there would be a sharp blow to her head to cause death. The author indicated that the authorities would

---

1. Hance later admitted to killing Thirkield also. The instant proceeding only involves his conviction for the murder of Gail Jackson. Hance was convicted of the Thirkield murder in military court, but his conviction was reversed by the United States Court of Military Review.

receive a telephone call to detail the location on Sand Hill where the body was located. On March 30, 1978, Fort Benning Military Police telephone operators and the Columbus Police Communications Department received telephone calls from a black male who identified himself as "Chairman of the Forces of Evil." The caller described the place where Jackson's body was located; the body was found there that day. Jackson's entire face and the front portion of her skull had been smashed; portions of her jawbone, teeth, bone chips, and partial teeth were discovered near the site. Also, her left elbow had been completely dislocated. According to the medical examiner, the cause of death was multiple blows to the head that could have been inflicted with a tire tool or jack handle.

On April 3, 1978, the body of Irene Thirkield was recovered on the Fort Benning reservation. The victim's head was virtually missing; she had sustained considerable skull damage. The cause of death was massive blunt force trauma to the head that could have been inflicted with an automobile jack. There were other similarities between the circumstances of the deaths of Jackson and Thirkield. Both bodies were recovered from wooded semi-secluded areas not far from access roads, and in the same geographical area. Both victims had been dragged from the road. Both were black females who were discovered in various stages of undress.

Fort Benning Criminal Investigation personnel learned that Hance was the last person seen with Irene Thirkield. On April 4, 1978, after being advised of his *Miranda* rights, Hance agreed to go to the headquarters office. In his statement to the authorities, Hance admitted to capturing the women, writing letters to the Columbus Police Department, and placing the telephone calls, asserting that his actions resulted from threats made to Hance by the "Forces of Evil." On April 5, 1978, Hance indicated that he wished to confess, gave a statement, and signed it.

In his confession, Hance stated that Jackson propositioned him for $20.00 at the Sand Hill Bar and Grill. He left with her, and had driven a short distance when she began to disrobe. Hance stopped the vehicle, became upset, and grabbed Jackson. When she attempted to escape, he struck her with a "karate chop" across the head. She fell across the door, bleeding. He pulled her into the woods and returned to his vehicle, where he picked up a jack handle before returning to the woods. Upon finding Jackson still breathing, he hit her in the head until she was dead. Hance also admitted to killing Thirkield.

On April 6, 1978, Hance gave another statement. In that statement, Hance indicated that Jackson's proposition had severely upset and angered him. He admitted to hearing "something pop" while dragging her into the woods. Hance further admitted that he was the only member of the "Forces of Evil."

At trial, clinical psychologist Lewis R. Lieberman testified for the defense that Hance had a personality disorder. Characteristic traits of the disorder include egocentrism, an inability to empathize with other people, and poor judgment. Dr. Lieberman stated that Hance had difficulty in ever admitting that he had done something wrong, and that he would try to cover up a mistake or blame others. Dr. Lieberman testified that there was no organic basis for Hance's personality disorder, and that although he had difficulty controlling his actions, Hance knew the difference between right and wrong. Dr. Lieberman indicated that the ability to recognize and admit that one had done wrong would be a sign of improvement, but on cross-examination admitted that people with personality disorders rarely improve over time, and that Hance had not "mellowed" in the six years since Dr. Lieberman had first examined him.

Other defense witnesses included First Sergeant Ronald R. Nelson, an Army officer who testified that Hance was dependable, trustworthy, and a good soldier, but that Hance had experienced financial and marital problems and had been under stress at the time in question. Other witnesses testified that Hance had not caused problems while incarcerated. Charles

Westcott testified that he had known Hance for twenty years and that Hance was friendly, courteous, industrious, and not a problem to the community. Westcott also stated that Hance's invalid mother had died as a result of a physical attack and rape.

Hance testified that he was divorced during March, 1977, and that money was a problem. He stated that his mother's assailant was never caught and that the attack had sickened him ever since. He said that he did not know why he killed Gail Jackson, and that she was not personally known to him. He admitted killing Irene Thirkield, but alleged that he "had lost all sense of control" and that his "mind flipped." He accepted responsibility for the Jackson murder, stated that he had begged God's forgiveness, and asked the jury to forgive him. He stated that in the six years following his first conviction, he had grown physically and spiritually and had made peace with God.

The jury sentenced Hance to death for the Jackson murder, finding that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved an aggravated battery to the victim.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel.

█ Hance argues that his attorney at the resentencing trial, Thomas Flournoy, rendered ineffective assistance of counsel by failing to effectively investigate and present evidence of Hance's mental illness, and by failing to adequately investigate Hance's background or to contact any members of his family.[2] As for Flournoy's failure to investigate Hance's background, we must defer to the state habeas court's fact finding that Hance instructed Flournoy not to contact and involve the members of his family, and that Flournoy complied with his client's instructions because he feared that if he did not, he would lose Hance's cooperation in the defense strategy. *Hance v. Kemp*, 258 Ga. 649, 373 S.E.2d 184, 190–91 (1988), *cert. denied*, 490 U.S. 1012, 109 S.Ct. 1658, 104 L.Ed.2d 172 (1989); *see* 28 U.S.C. § 2254(d).[3] Flournoy testified that he had great difficulty dissuading Hance from denying that he had committed the murders at the resentencing trial. 373 S.E.2d at 189. Given Hance's conviction and the overwhelming evidence of guilt, Flournoy thought that this strategy would be implausible and unproductive. 373 S.E.2d at 190–91. Once Flournoy persuaded Hance that the better strategy would be to admit guilt and express remorse, he complied with Hance's insistence that his family not be contacted or involved rather than risk losing Hance's cooperation in "the only viable defense that he had." 373 S.E.2d at 190.

Although Flournoy was prevented from contacting Hance's family, he did investigate and present substantial mitigating evidence. First Sergeant Ronald R. Nelson testified that Hance was dependable, trustworthy, and a good soldier who got along well with his peers. Nelson stated that Hance was not violent and that he had never seen him lose his temper, but alluded to Hance's financial and marital problems. Charles M. Westcott testified that he had

---

**2.** Although we doubt that Hance has waived his right to assert the claim of ineffective assistance of counsel under the circumstances of this case, we need not affirmatively decide this issue in light of our disposition of the merits of the ineffectiveness claim.

**3.** Hance is not entitled to an evidentiary hearing to demonstrate that Flournoy's testimony at the state habeas hearing was perjury. Hance's attorney at the state habeas proceeding had every opportunity to adduce evidence of perjury, and Hance now proffers no evidence that was not available at the state habeas hearing. Hance argues that Flournoy had a telephone conversation with Hance's habeas attorney shortly be-

fore the evidentiary hearing, and that what Flournoy said in this telephone conversation contradicted Flournoy's testimony at the hearing on the issue of whether or not Hance instructed Flournoy not to involve members of Hance's family. The state habeas court credited Flournoy's testimony that Hance had instructed Flournoy not to involve his family. There is ample support in the record for this finding. We must defer to the state habeas court's implied credibility determination in favor of Flournoy. *Green v. Zant*, 715 F.2d 551, 557 (11th Cir.1983), *cert. denied*, 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984).

known Hance for twenty years, and that Hance was friendly, courteous, industrious, and not a problem to the community. Westcott stated that Hance came from a hardworking, church-going family, and that everyone liked him. Westcott also testified that Hance's invalid mother had died as a result of a physical attack and rape. Westcott concluded that Hance had been rehabilitated, that he was a bright and exceptionally talented man, and that his life should be spared. Richard Miles, the warden at the Muscogee County Jail, testified that Hance had caused no problems at the jail. Assistant Warden Daniel Bettis testified as to Hance's daily activities at the jail and stated that he had experienced no problems with him. Aaron Roquemore, counselor at the State Prison in Jackson, Georgia, testified that Hance had caused no problems at the State Prison, and that he was adjusting appropriately to his confinement. Finally, Stephen Clemmons discussed the importance of mercy and forgiveness and urged the jury to spare Hance's life.

Under all of the circumstances, we conclude that Flournoy's decision to comply with Hance's instruction not to contact family members did not fall below the wide range of reasonable professional assistance held to be sufficient under *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).

■ Hance also argues that Flournoy was ineffective with respect to the evidence of his mental illness. Flournoy engaged Dr. Lewis Lieberman, a clinical psychologist, to testify on Hance's behalf. Dr. Lieberman testified that Hance suffered from atypical personality disorder, characterized by egocentrism and an inability to feel empathy for others. According to Dr. Lieberman, Hance is impulsive, suffers from poor judgment, tries to blame his mistakes on others, and has trouble admitting that he

has done something wrong. Dr. Lieberman also testified that he suspected that Hance had displayed these characteristics throughout his lifetime and that his chances of rehabilitation were poor. However, Dr. Lieberman stated that if Hance could recognize and admit that he had done something wrong, it would be a sign of progress.[4] Hance argues that Dr. Lieberman's testimony discredited the entire defense, which was that Hance had committed the murder but was remorseful.

The state habeas court found that Flournoy had evaluated evidence from six to eight mental health experts, and that only Dr. Lieberman was willing to testify that Hance suffered from a mental disorder and diminishment of mental capacity. We must defer to this finding of fact.[5] Under the circumstances, Flournoy's performance in selecting Dr. Lieberman was clearly not deficient. Although Dr. Lieberman's testimony was not entirely favorable, he did testify that Hance suffered from a mental disorder, which the jury might have perceived as diminishing his culpability. Also, although Dr. Lieberman testified that Hance's prognosis was poor, he did state that if Hance could recognize and admit that he had done something wrong, this would be a sign of progress. The jury could have accepted Hance's subsequent expression of remorse as an indication that he could be rehabilitated.

Hance also seems to argue that Flournoy was ineffective for presenting Dr. Lieberman rather than no expert witness. However, as explained above, Dr. Lieberman's testimony contained both favorable and unfavorable elements. Under all of the circumstances, we conclude that Flournoy's choice of Dr. Lieberman from the available psychologists and his decision to use Dr.

---

4. Hance also argues that Flournoy was ineffective because he failed to provide information regarding Hance's family background to Dr. Lieberman. As we have already held, Hance's instruction that Flournoy not contact his family effectively precluded Flournoy from furnishing such information to Dr. Lieberman.

5. Hance's only argument against our deferring to the state courts' fact findings is that he is entitled to an evidentiary hearing based on Flournoy's perjury in the state court. We have already rejected this argument.

Lieberman rather than present no expert psychological testimony were reasonable.[6]

Having found no deficiency with respect to the performance prong of the *Strickland* test, we decline to address the prejudice prong.

### B. Other arguments.

 The only aggravating circumstance argued to the jury at Hance's resentencing trial was that the murder involved an aggravated battery to the victim.[7] Hance argues that because the only evidence of an aggravated battery was the dislocation of Gail Jackson's elbow shortly before her death, the aggravating circumstance of aggravated battery was applied in an unconstitutionally vague and overbroad manner. However, as the Georgia Supreme Court found, the victim was first struck on the head with a karate chop. Moreover, while still alive she was beaten with a tire jack with such force that when her body was discovered her face was completely missing. *Hance v. State*, 254 Ga. 575, 332 S.E.2d 287, 291–92, *cert. denied*, 474 U.S. 1038, 106 S.Ct. 606, 88 L.Ed.2d 584 (1985). There was ample evidence of the type of aggravated battery contemplated by O.C.G.A. § 17–10–30(b)(7).

During its deliberations, the jury at the resentencing trial requested a definition of "life imprisonment" from the trial court. The court declined to respond to the question; Hance was sentenced to death soon thereafter. Hance argues that the trial court's failure to define one of the jury's sentencing options was reversible error. This argument is without merit. *See California v. Ramos*, 463 U.S. 992, 1013–14, 103 S.Ct. 3446, 3460, 77 L.Ed.2d 1171 (1983).

Hance raises several other issues, including collateral estoppel with respect to whether Hance's statements following his arrest should have been suppressed, ineffectiveness of counsel on direct appeal, the trial court's failure to give a simple battery instruction to the jury, and the contention that Hance's death sentence was based upon inaccurate evidence. Even assuming that they are not procedurally barred, these claims are all without merit and warrant no discussion.

AFFIRMED.

---

**6.** It is interesting to note that the testimony of Dr. Allsopp, which Hance now proffers, is not entirely favorable either. Dr. Allsopp's affidavit indicates that Hance suffers from a personality disorder with paranoid, dependent, and narcissistic features, as well as atypical depression. Dr. Allsopp characterized Hance as impulsive, alienated, hypersensitive to criticism, paranoid, and argumentative. Dr. Allsopp noted that individuals such as Hance are often sullen, angry, demanding people who excessively utilize a transfer of blame mechanism, and that Hance's perception of man-woman relationships is marked by feelings of "sadness, pain, hostility and homicidal ideation." Dr. Allsopp also observed that such people's "seething anger, combined with their sensitivity to criticism and suspiciousness can lead to unpredictable and violent outbursts." Although Dr. Allsopp did connect Hance's crimes to the difficulties he experienced during childhood, the prosecution could have used his detailed and generally unflattering analysis to argue that Hance is dangerous to society.

**7.** O.C.G.A. § 17–10–30(b)(7) lists as an aggravating circumstance: "The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim."
O.C.G.A. § 16–5–24 defines "aggravated battery" as follows: "(a) A person commits the offense of aggravated battery when he maliciously causes bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, or by seriously disfiguring his body or a member thereof."