991 F.2d 806
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Johnnie Leto PICKENS, Defendant-Appellant.
 No. 91-7092.
 United States Court of Appeals, Tenth Circuit.
 April 19, 1993.
 
 Before SEYMOUR and MOORE, Circuit Judges, and KELLY, District Judge.*
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Johnnie Leto Pickens appeals from convictions arising from a multi-count indictment charging distribution of cocaine, using a communication facility to facilitate a controlled substance offense, and conspiracy. He argues because the conspiracy counts of which he was charged do not provide the same punishment, the trial court committed plain error requiring a new trial by submitting a general verdict on those counts and failing to require the jury to specify its findings by special verdict. Defendant also argues his sentences on the substantive counts should be reduced if we vacate the conspiracy verdict, and the district court erred in failing to consider a downward departure in sentencing. Finally, he contends, when the district court failed to make findings necessary to permit introduction of coconspirator hearsay statements until after trial, the court committed reversible error.
 
 
 2
 We conclude the ambiguity in the verdict does not affect the conviction but does require relief on the conspiracy counts. This holding renders moot defendant's contention his remaining sentences should be vacated. We also hold that, when the government asked the court to defer its findings on admissibility of the coconspirator statements, it assumed the burden of insuring the findings were made. Under the circumstances of this case, however, any resultant error was harmless. We deny review of the district court's refusal to depart downward.
 
 
 3
 The government's case was focused on defendant's activities in response to solicitations by an informant who was acting at the direction of a narcotics agent of the State of Oklahoma. Suffice for the purpose of our review that the government introduced evidence showing that the defendant, Mr. Pickens, made direct sales of cocaine base to the informant; was contacted by the informant through the use of a paging device and subsequently delivered cocaine base to her; and that Mr. Pickens told the informant his source for cocaine base was codefendant, Eddie Williams. The government also established other instances in which the informant made purchases of cocaine base under circumstances involving codefendants, Mr. Williams and Dexter Pickens.
 
 
 4
 In addition to other substantive counts pertaining to the possession and distribution of cocaine, the three men were charged with conspiring to: (1) possess with intent to distribute cocaine; (2) distribute cocaine; and (3) use a communication facility to facilitate the distribution and possession of cocaine with intent to distribute. All three were found guilty of conspiracy upon a general verdict which did not specify whether it was based on one or more of the charged conspiratorial objects. Mr. Pickens separately appeals his convictions.
 
 
 5
 The predicate of the defendant's argument is that the maximum penalty for a conspiracy involving the communications device is four years, whereas the maximum on the other offenses is twenty years to life, depending upon the amount of illegal substance involved.[1] Mr. Pickens received a sentence of two hundred sixty-two months on the conspiracy conviction, presenting a significant deviation from the statutory penalty if the jury intended to find him guilty of only the communications device conspiracy. We believe imposition of a sentence based upon the most onerous of possible offenses under these circumstances results in a substantial miscarriage of justice which must be corrected.
 
 
 6
 In Newman v. United States, 817 F.2d 635, 637 (10th Cir.1987), we held the district court committed plain error under very similar circumstances. In that case, the defendant was convicted of conspiring to distribute both narcotic and nonnarcotic drugs in addition to other offenses. In sentencing, the trial court employed the higher penalty imposed for conspiracy involving narcotics, even though the jury returned only a general conspiracy verdict. We held it plain error to utilize the higher penalty because the court did not know with certainty whether the maximum sentence for the narcotics offense or that for the nonnarcotics offense was applicable. Noting that "culpability for conspiracy is not a necessary consequence of a conviction on the predicate offenses," id. at 638, we stated "[i]t goes without saying that that sort of conjecture is an impermissible technique in a system of jurisprudence entitling the accused 'to have his guilt found by a jury directly and specifically, and not by way of possible inference.' " Id. at 639 (quoting Glenn v. United States, 420 F.2d 1323, 1325-26 (D.C.Cir.1969) (quoting United States v. DiMatteo, 169 F.2d 798, 801 (3d Cir.1948)).
 
 
 7
 Although recognizing other courts in analogous circumstances have allowed the government the option to consent to resentencing on the lower maximum instead of retrial, we concluded such a course inappropriate because "here the uncertainty taints the conviction itself." Id. at 639. We therefore vacated the conspiracy conviction and remanded for a new trial.
 
 
 8
 The government contends Newman has been rendered invalid by Griffin v. United States, --- U.S. ----, 112 S.Ct. 466 (1991). In Griffin, the Court limited the reach of Stromberg v. California, 283 U.S. 359 (1931), to require reversal of a general verdict only when the jury had the option of relying on a legally inadequate theory, not a factually inadequate theory. Griffin, 112 S.Ct. at 472. The Court's holding is premised on the common law rule "that a general jury verdict was valid so long as it was legally supportable on one of the submitted grounds." Id. at 469.
 
 
 9
 The government asserts Griffin, casts doubt on Newman 's entire holding. Following the logic of Griffin, the government argues, since there is an adequate legal basis for the jury's verdict on any of the three objects of conspiracy, the general verdict is supportable and must not be overturned. Moreover, the government contends, we can assume the jury relied upon factually supported charges because the jury found the defendant guilty of the substantive charges which were the product of the conspiracy.
 
 
 10
 The government's argument is not without logic. Since Griffin, we cannot adhere to a rule that predicates a reversal of a conviction solely upon the premise that the verdict on a multifaceted conspiracy charge is factually ambiguous. With that as a given, however, the real question is whether another aspect of the Newman holding is still valid. That is, in a case in which more than one conspiratorial objective is charged, can a sentence to the most onerous of several possible penalties be supported by a general verdict when there is doubt about the jury's findings? The government argues for the affirmative, but we disagree.
 
 
 11
 A large measure of the government's argument rests upon the fact that the jury found Mr. Pickens guilty of the substantive offenses enfolded by the conspiracy. Hence, the prosecution argues, we must assume the general verdict encompasses all the charged objectives. We rejected that argument in Newman, however,[2] and nothing decided in Griffin undercuts that rejection. Although the Griffin Court's ruling prevents the vacation of a legally supportable verdict, it does not eliminate the concern we expressed in Newman over the effect of the ambiguous verdict on the judge's sentencing decision. Neither does Griffin obviate our belief that certainty in the criminal process holds sway over ambiguity.
 
 
 12
 We recently considered this very problem in United States v. Pace, 981 F.2d 1123 (10th Cir.1992), cert. denied, 113 S.Ct. 1401 (1993), and concluded where there is sufficient evidence to support convictions on alternative charges a sentence on the most aggravated charge cannot stand. Accordingly, we now conclude the conspiracy conviction must be affirmed here, but fundamental justice requires reconsideration of the sentence. The severity of the punishment imposed, coupled with the lingering doubt over the jury's findings, simply underscores our conclusion in Newman that conjecture has no place in our judicial system. We must balance the efficacy of the jury's determination of guilt with the need for certainty in the process.
 
 
 13
 When sentencing choices are made to rest upon conviction of specific crimes, incertitude about the conviction militates against choosing the severest of the available penalties. The doubt easily can be avoided by submitting special verdicts to the jury, but when that is not done, the sentencing judge may not speculate on which of the several offenses underlies the verdict.
 
 
 14
 On remand the government should be given the option of consenting to resentencing on the basis of the penalty for the communications device conspiracy or to retrial on all conspiracy counts. Pace, 1992 WL 309897, at * 4. If the government opts for retrial, however, and a not guilty verdict is returned, the district court shall reconsider the effect of such a verdict upon its sentence on the remaining counts.
 
 
 15
 Defendant next argues the district court erred in the admission of hearsay statements of coconspirators when the court failed during the trial to make the findings required by Fed.R.Evid. 801(d)(2)(E). The predicate for admissibility of such testimony is that (1) a conspiracy existed, (2) the declarant and the defendant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the objects of the conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Perez, --- F.2d ----, No. 90-4149, 1993 WL 88620 (10th Cir. Mar. 30, 1993) (en banc) (Perez II ); United States v. Petersen, 611 F.2d 1313, 1330 (10th Cir.1979), cert. denied, 447 U.S. 905 (1980). Essential to admissibility of such testimony is the trial court's findings of the predicate facts. Perez II, 1993 WL 88620, at * 6.
 
 
 16
 While the preferred order of proof is for the government to first introduce independent evidence of the conspiracy and the defendant's relation to it before offering the hearsay, Petersen, 611 F.2d at 1330, in certain circumstances when dictated by practicality, the court may allow a deviation from the preferred order and may admit the statements subject to subsequent connecting proof. Id. The district court's determination of the order of proof and the ultimate admissibility of coconspirator hearsay are issues of discretion reviewed by us for abuse. United States v. Hernandez, 829 F.2d 988, 994 (10th Cir.1987), cert. denied, 485 U.S. 1013 (1988); United States v. Mobile Materials, Inc., 881 F.2d 866, 869 (10th Cir.1989), cert. denied, 493 U.S. 1043 (1990).
 
 
 17
 Notwithstanding our alteration of the parameters of the discretion given district courts in setting the order of proof, we always have held "the admission of co-conspirator hearsay when the required findings have not been made at some point before or during trial constitutes reversible error." United States v. Perez, 959 F.2d 164, 167 (10th Cir.1992) (Perez I ). Thus, although we have loosened the strictures on when the findings have to be made, we nonetheless have been unswerving in holding those findings are necessary to admit coconspirator hearsay.
 
 
 18
 In this case, when the government sought to introduce hearsay coconspirator statements through the testimony of the state narcotics agent and another, defendant objected. At the request of the government, but not without reluctance and over the further objection of the defendant, the trial court permitted the government to proceed upon the premise it would ultimately connect all the necessary evidence.
 
 
 19
 After the presentation of its case, the government rested without referring to the delayed ruling on the admissibility of the hearsay. Defendant moved for a mistrial on the ground the government failed to establish the basis for admissibility of the statements, but that motion was denied and no findings on admissibility were made.
 
 
 20
 Approximately one week after trial, the government filed a "Motion for Bourjaily [v. United States, 483 U.S. 171 (1987) ] Order" asking the court to make the explicit admissibility findings that were not made during trial. Defendant opposed the motion as untimely. Holding that it would have done so in response to a government motion at the conclusion of the prosecution's case, the court granted the motion and made the findings.
 
 
 21
 Citing United States v. Alfonso, 738 F.2d 369, 371 (10th Cir.1984), defendant contends the district court's failure to make record findings during trial constitutes a default in its duty to protect him from the inherent danger of prejudice resulting from a jury's consideration of hearsay statements that lack the necessary predicate of reliability. He pointedly argues the court's post-verdict finding did not cure the error because the jury was still permitted to hear the hearsay evidence over objection and without a determination of its admissibility.
 
 
 22
 In response, the government contends the defendant's arguments are meritless because "the district court implicitly made the required findings at the close of the government's case." The prosecution also suggests the defendant contributed to any possible error because he "did not seek more specific findings either at that time or later." Neither of these arguments is persuasive.
 
 
 23
 First, the burden of insuring that the findings are made falls upon the party introducing the evidence. Perez II, 1993 WL 88620, at * 6. There is nothing within the jurisprudence of evidence which suggests the burden of proving admissibility falls upon the party resisting its admission. More importantly, when the government requests the trial court to depart from the preferred order of proof for its benefit and upon the representation that it will ultimately establish the basis of admissibility of coconspirator hearsay, the government assumes the burden of ensuring the court is not led into error. In contrast, no burden falls upon the party resisting the hearsay. Id., at *6.
 
 
 24
 The government argues against this analysis, claiming our decisions in United States v. Doran, 882 F.2d 1511 (10th Cir.1989), and United States v. Gomez, 810 F.2d 947 (10th Cir.), cert. denied, 482 U.S. 908 (1987), support its position. The government claims in these cases we "upheld the district court's complete failure to make explicit findings under the Rule." Since argument of this case, our en banc decision in Perez II, obviates any applicability of those cases.
 
 
 25
 We will not undertake a review of the record to hypothesize whether the district court made the required inquiry unless the record is so clear that there can be no dispute over that issue. Perez II, 1993 WL 88620, at * 7. For reasons we shall discuss hereafter, this case does not require such an indulgence, however.
 
 
 26
 The government's second argument is even less convincing. The prosecution contends "the district court did in fact make specific findings ... because it implicitly ruled in favor of the admissibility of the co-conspirator statements when it denied ... appellant's motion for dismissal or mistrial...." (emphasis added). While the sense of the argument is that the district court would not have denied the defendant's motions if it had not determined the hearsay was admissible, the notion that an implication is the functional equivalent of specificity in this context is novel. If the government's position is to be well taken, it follows that its post-trial motion to procure the appropriate findings was a meaningless futility. That result makes either the argument, or the motion, disingenuous.
 
 
 27
 The fact is, the court did not make the necessary findings prior to the submission of the case, and the post-trial attempt to do so is problematical. Nonetheless, if that procedure was erroneous, under the circumstances it had to have been harmless.
 
 
 28
 In Perez II, we reaffirmed our prior holdings that improperly admitted coconspirator hearsay may constitute harmless error. Perez II, 1993 WL 88620, at * 6. See also United States v. Wright, 932 F.2d 868, 880 (10th Cir.1991) (citing United States v. Machado, 804 F.2d 1537, 1542 (11th Cir.1986)). We believe this case presents just such an instance.
 
 
 29
 Only two hearsay statements implicated Mr. Pickens. One was made by Eddie Williams to his brother, Frank, that a friend of Eddie's, an "older man" sold drugs for Eddie. When asked if Eddie had identified the "older man," Frank testified, "the only thing I can remember is he said some kind of name like Pickens or something." The other statement was made by Dexter Pickens to the narcotics agent. When the agent asked Dexter about what role another person had played in procuring a specific quantity of "dope," Dexter replied the other person "had dropped the dope off at his father's [Johnnie Pickens's] house."
 
 
 30
 In the context of the entire record, including defendant's concession that he was guilty of distributing cocaine,[3] we do not believe these vague implications were consequential. Moreover, the same evidence was introduced through different sources. The informant testified defendant had identified Mr. Williams as his drug source, and that they had sold crack in defendant's house. Other witnesses testified Mr. Pickens sold crack from his house as well. We cannot, therefore, conclude the admission of either of the two statements objected to by the defendant could be more provocative or have greater effect on the jury than the other evidence properly admitted against him. To hold the court's error harmful under these circumstances is not realistic and would grant greater significance to form than to substance.
 
 
 31
 Finally, Mr. Pickens argues the district court erred in finding he did not establish factors that would warrant a downward departure in his sentence. Defendant contends the court could have departed downward to reflect time he had spent in state custody on charges growing out of conduct relative to the instant offenses. The trial court declined to depart, ruling the defendant had failed to establish facts proving departure was appropriate. Defendant argues this finding was clearly erroneous.
 
 
 32
 Notwithstanding that error, defendant does not contest the fact that if departure was appropriate, the decision to do so was discretionary. At the time of sentencing, defendant objected to a statement in the presentence report that departure was not available in this case. He contended the court should depart because the Sentencing Commission had not contemplated the situation of a defendant who, at the time of federal sentencing, is serving a state sentence for conduct arising from the same criminal transaction.
 
 
 33
 Assuming, without deciding, defendant's position is supportable, it is not persuasive. We have held that discretionary decisions denying downward departure are not reviewable. United States v. Eagan, 965 F.2d 887, 893 (10th Cir.1992).
 
 
 34
 Concluding the remaining arguments raised are without merit,[4] the judgment of the district court is AFFIRMED in part and REVERSED in part. The case is REMANDED for the purpose of resentencing or retrial of the conspiracy counts in accordance with this opinion.
 
 
 35
 PAUL KELLY, Jr., Circuit Judge, dissenting.
 
 
 36
 My colleagues, following the court's reasoning in Newman v. United States, 817 F.2d 635, 637 (10th Cir.1987), and more recently in United States v. Pace, 981 F.2d 1183 (10th Cir.1992), cert. denied, S.Ct. No. 92-7447, 1993 WL 31358 (Mar. 1, 1993), have remanded this case for resentencing on the least of the counts for which defendant was charged in the conspiracy count and convicted, i.e., the knowing and intentional use of a communications facility, to wit: a telephone, or for a retrial on all conspiracy counts. I respectfully dissent. In my view, my colleagues' reasoning is misplaced, as the facts are clear and distinct from those of Newman and Pace.
 
 
 37
 Ironically, and for the reasons noted below, I, too, would remand this case for further proceedings.
 
 
 38
 This is not a case wherein the finding of guilty to a conspiracy count gives rise to confusion as to which predicate acts the defendant may have committed. In this case, the facts are clear; they are clear because the government indicted the defendant on conspiracy in concert with other charges, for knowingly and intentionally possessing with the intent to distribute cocaine, knowingly and intentionally distributing cocaine, and knowingly and intentionally using a telephone to facilitate the foregoing offenses. Defendant was additionally indicted in Count I with knowingly and intentionally distributing approximately 990 milligrams of rock cocaine. In Count V, he again was indicted for knowingly and intentionally distributing about 1.77 grams of rock cocaine. Count XIII charged him with knowingly and intentionally distributing 1.4 grams of rock cocaine, and in Count XVIII he was charged with knowingly and intentionally distributing approximately 1.98 grams of rock cocaine. He was charged in Counts IV, XII and XVII with knowingly and intentionally using a communications facility (a telephone) to accomplish his acts.
 
 
 39
 The overt acts addressed in the conspiracy count incorporate each count for which defendant is charged by reference. Defendant was convicted on all counts of the indictment. In my view, there is no basis to suggest that the trial judge was confused at the time of sentencing as to the defendant's guilt on each count.
 
 
 40
 My views are supported by the state of the evidence as the trial court perceived it in the course of 10 days of trial. To elaborate, defense counsel's opening statement made it clear to the jury that there was no dispute as to defendant's guilt with regard to the distribution of drug counts. He raised some question as to whether defendant was illegally using a telephone, and denied a conspiracy. The record suggests that the defendant was doing his best to protect family members from joint guilt with him. The government's evidence addresses each and every element in the indictment, and none of it was challenged by the defendant. Upon resting, defense counsel again admitted his client's guilt as to the distribution of drug charges. When the defendant was called to testify, he admitted his guilt to all counts of the indictment regarding distribution of drugs. He had misgivings about his guilt on the telephone charge, and contested the conspiracy charge. Upon resting, defense counsel moved again for acquittal, but admitted the sufficiency of the evidence as to Counts I, V, VIII and XVIII. Defense counsel raised no objections to the instructions, nor did he seek any clarity with regard to them, particularly as pertained to the issues raised here. Defendant's counsel did not object to the jury verdict form. In final argument, defendant's counsel probably said it best when he made it clear to the jury that his client was a drug dealer and was not denying it! He told the jury, "Your proper verdict is guilty on the four counts of distribution."
 
 
 41
 There were no motions for a new trial, and no error was urged. At the time of sentencing, the defendant's counsel again admitted defendant's guilt to the charges involving distribution of drugs. To suggest that this trial judge was confused is misplaced.
 
 
 42
 Notwithstanding my colleagues' reasoning, I am convinced that the sentencing guidelines control this case. I am satisfied we cannot ignore the directives provided to a trial court addressing a case of this character. Section 1B1.2(d) provides as follows:
 
 
 43
 A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.
 
 
 44
 The commentary to § 3D1.2 refers to § 1B1.2(d) and states as follows at page 257 of the sentencing guidelines:
 
 
 45
 8. A defendant may be convicted of conspiring to commit several substantive offenses and also of committing one or more of the substantive offenses. In such cases, treat the conspiracy count as if it were several counts, each charging conspiracy to commit one of the substantive offenses. See § 1B1.2(d) and accompanying commentary. Then apply the ordinary grouping rules to determine the combined offense level based upon the substantive counts of which the defendant is convicted and the various acts cited by the conspiracy count that would constitute behavior of a substantive nature. Example: The defendant is convicted of two counts: conspiring to commit offenses A, B, and C, and committing offense A. Treat this as if the defendant was convicted of (1) committing offense A; (2) conspiracy to commit offense A; (3) conspiracy to commit offense B; and (4) conspiracy to commit offense C. Count (1) and count (2) are grouped together under § 3D1.2(b). Group the remaining counts, including the various acts cited by the conspiracy count that would constitute behavior of a substantive nature, according to the rules in this section.
 
 
 46
 If my analysis is correct, and assuming the sentencing process correctly assessed the sentence and was applied here, then the trial court's discretion should not be disturbed.
 
 
 47
 Having said this, it also follows that if the trial court is clearly in error as to his application of the guideline requisites, this court should remand the case for the purpose of having the trial judge correct an injustice. It is in this area that I find the basis for remand. Here, I am not privy to the presentence report, and the trial court's record at the time of sentencing is not clear, but I am satisfied that something is amiss. Having added the quantity of drugs alleged and found in each count, my calculations suggest that we are dealing only with approximately 5.6 grams of rock cocaine in all. My calculations suggest an offense level of 26 points, which supports a sentence of between 63 and 78 months. The defendant's criminal history might enhance the sentence, but surely not to the extent imposed. The trial record suggests that at the time of sentencing the trial court announced a base level of 34 points geared to the drug quantity involved. (Tr. VIII at 115.) The trial court further noted at page 111 that the actual drug transaction did not fully represent the scale of the offense. Additionally, the trial court took into account the amount of monies paid for drugs in order to establish some factual basis for determining the average cost per gram of drugs sold. This, in his view, assisted him in reaching an offense level. Having established an offense level of 34 points, I trust with a serious criminal history, it follows that the trial court supported the sentence imposed.
 
 
 48
 At the risk of offending the trial court, it would appear that the probation office confused 990 milligrams of rock cocaine for 990 grams of rock cocaine in Count I. If this is so, and it surely must be the case, I surmise the trial judge calculated a total of approximately 995.15 grams, rather than 5.6 grams by my count. If this was his approach, the trial court was clearly in error.
 
 
 49
 In my view, this case should be remanded with a directive for the trial judge to review the presentence report and his own calculations. If the trial judge is convinced that he accurately assessed the sentence, then he may articulate his findings and reasoning in open court. If, however, he is persuaded that his calculations are misplaced, in the interest of manifest justice he should correctly resentence the defendant.
 
 
 
 *
 Honorable Patrick F. Kelly, Chief Judge for the United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 21 U.S.C. §§ 846, 843(c), and 841(b)
 
 
 [2]
 Newman v. United States, 817 F.2d 635, 639 (10th Cir.1987)
 
 
 [3]
 On three separate occasions during his testimony, defendant admitted he had sold crack
 
 
 [4]
 Mr. Pickens adopted arguments of codefendant Eddie Williams which were disposed of in United States v. Williams, No. 91-7094, filed contemporaneously with this case