**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Oscar J. PEREZ, Defendant–Appellant.**

**No. 90–4149.**

United States Court of Appeals,
Tenth Circuit.

March 17, 1992.

---

David L. Grindstaff, Salt Lake City, Utah, for defendant-appellant.

Wayne T. Dance, Asst. U.S. Atty. (Dee Benson, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before SEYMOUR and MOORE, Circuit Judges, and SPARR,* District Judge.

SEYMOUR, Circuit Judge.

Oscar Perez was convicted after a jury trial of conspiring to distribute five or more kilos of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) (1988), and of possessing more than 500 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2 (1988). On appeal, Perez contends that: the court committed reversible error in admitting the hearsay statements of alleged co-conspirators; the evidence was insufficient to support his conviction for either conspiracy or possession with intent to distribute; he was entrapped as a matter of law; and his right to due process was violated by the government's outrageous conduct. We agree that the admission of the hearsay statements requires reversal.

## I.

### FACTUAL BACKGROUND

The facts underlying the convictions, viewed in the light most favorable to the government, are briefly as follows. The events at issue involve an Organized Crime Drug Enforcement Task Force, made up of officers from several different federal and local agencies, operating in the Salt Lake City area. As a result of investigations unrelated to the Perez prosecution, in the summer of 1989 the task force interviewed an informant named Paul Alfonso, who mentioned Perez in connection with illegal drug activity. Following this interview, the task force decided to initiate an investigation targeting Perez.

At some point before this investigation began, Perez had loaned $10,000 to Robert Pederson, an alleged co-conspirator, to enable Pederson to buy auto parts for resale in an attempt to save Pederson's failing

---

* The Honorable Daniel B. Sparr, United States District Judge for the District of Colorado, sitting by designation.

diesel repair business. When Pederson was unable to resell the parts and repay the loan, he put Perez to work at his repair shop at inflated wages. While Perez was working there in the spring of 1989, he pressured Pederson for his money, stating that he could use it in his cocaine dealings. He told Pederson that his source for the drug had "dried up, that he had customers in Park City that had orders to be filled." Rec., vol. III, at 12.

Pederson had also done engine repair work for the informant, Paul Alfonso. Shortly after Alfonso's interview with the drug task force, Alfonso told Pederson that he was in possession of large quantities of cocaine which he could not sell, and he asked Pederson if he knew anyone who wanted to buy. Pederson related this information to Perez and asked him if he was interested. Perez said he was, and "wanted to know how much he could get the cocaine for, and ... how much he could get." *Id.* at 14.

Perez did not want to meet Alfonso face-to-face, preferring for security reasons to use Pederson as a middleman. However, Pederson did not want to get involved in the drug activity and did not want to be in the middle. He arranged for Perez and Alfonso to come to the shop at the same time without telling either of them that the other would be there. He then introduced the men, telling them that they had a mutual friend named Larry Jensen, and left them.

The ensuing meeting between Perez and Alfonso, which is critical to Perez's claims of entrapment and outrageous government conduct, was described at trial in sharply differing testimony. Although Pederson did not stay with the men while they talked, he observed them from a distance of about thirty feet. He testified that they appeared to have a friendly conversation, that they "were getting along, and they were laughing." Rec., vol. V, at 149. He also stated that they remained fifty to a

hundred feet from Alfonso's truck and that he never saw Perez approach the truck.

Perez's trial testimony describing this encounter was very different.[1] He testified that the conversation took place next to the truck, that Alfonso showed him a pistol in the front seat, and that Alfonso said he had a gas-operated shotgun behind the seat. Perez testified that Alfonso threatened to harm Perez's ex-wife, with whom he had reconciled, and her daughter if Perez did not cooperate with him in the drug transaction. Perez maintained throughout trial that his subsequent participation in the negotiations and the purchase of cocaine was induced by his fear for the well-being of his ex-wife and her daughter.

Alfonso and undercover drug agents decided to stage a sham drug delivery at the airport for Pederson's benefit. On August 18, 1989, Alfonso called Pederson to tell him a shipment had come in and asked Pederson to go to the airport as a lookout. At the airport, Pederson saw two undercover agents, whom he assumed to be drug dealers from California, walk out of a jetway carrying a gym bag. As Pederson watched, the men met Alfonso, handed him the gym bag, and walked to the ticket counter. Pederson followed the men to the counter and then met Alfonso, who opened the gym bag and showed him four blocks that appeared to be cocaine kilos packaged in fiberglass. Pederson called Perez on his mobile phone to tell him that the drugs had arrived, that he was going to follow Alfonso downtown to deliver three of the kilos, and that Perez was to have the fourth one. Alfonso, however, delivered all four kilos to two undercover drug agents waiting downtown. He then paid Pederson $200 for being a lookout and told him that he was not able to get a kilo for Perez. Pederson informed Perez, who became upset, saying he needed the cocaine because people were waiting. Alfonso told Pederson to reassure Perez that another shipment would be coming. Perez responded that he needed one kilo immediately to hold his customer until more became available.

---

1. Paul Alfonso did not testify. Uncontroverted evidence at trial indicated that he had a lengthy criminal history, including a murder conviction, and that he had been killed by police in California.

In late August, the agents who delivered the gym bag to Alfonso met with Pederson and Alfonso at a restaurant to discuss the price and the amount of cocaine Perez could buy. Perez and Pederson met with the undercover agents the next day and in early October to arrange amounts and price. Perez consistently stated he wanted ten kilos a week. Perez and the two agents had a final meeting on October 25 and arranged for a drug deal to take place at an airport hotel.

The actual drug transaction, which took place on November 1, was initially attended by Perez and the same two agents, who brought with them ten kilos of cocaine. Perez took a sample from one of the kilos and left the room to show it to his partner. When he returned, he said he wanted to bring his partner up and have him examine the drugs. The agents agreed and a man named Paul Gonzales came into the room. After Gonzales tested all ten kilos, he and Perez selected one to purchase. Perez was arrested after he left the room with the kilo, and Gonzales was arrested in the parking lot about the same time.

## II.

### CO–CONSPIRATOR HEARSAY

 We turn first to the allegation of error with respect to the trial court's admission of hearsay statements by alleged co-conspirators. A statement is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E). "Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule." *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). In this circuit,

> "a coconspirator's hearsay statement is *not admissible unless* the trial judge finds three facts by a preponderance of the evidence. The trial judge must determine that the conspiracy existed, that the declarant and the particular defendant were members of the conspiracy,

and that the statement was made during the course of and in furtherance of the conspiracy."

*United States v. Radeker,* 664 F.2d 242, 243 (10th Cir.1981).

We held in *Radeker* that the trial court commits reversible error by admitting such a statement over a hearsay objection without making the requisite findings on the record, even when the defendant does not specifically request them. *Id.* at 244. Although the court should ordinarily make these findings prior to admitting the statement, we have recognized that it is not always reasonably practicable to do so. *See, e.g., United States v. Cardall,* 885 F.2d 656, 669 (10th Cir.1989). Accordingly, we have on several occasions deferred to the trial court's discretionary decision to deviate from the preferred order of proof. *See id.* (citing cases).

We have nonetheless continued to recognize that the admission of co-conspirator hearsay when the required findings have not been made at some point before or during trial constitutes reversible error under the circumstances present in *Radeker.* In *United States v. Alfonso,* 738 F.2d 369 (10th Cir.1984), we were concerned with the trial court's failure to determine the facts on the record in a trial to the bench. Although we distinguished *Radeker* as inapplicable to bench trials, we pointed out that under *Radeker* the "[f]ailure to make these findings as a matter of record is reversible error in a jury trial." *Id.* at 371. We likewise recognized the holding in *Radeker* in *United States v. Monaco,* 700 F.2d 577 (10th Cir.1983). There the defendant had not raised a hearsay objection to the statements and we undertook a plain error analysis. In so doing, we distinguished *Radeker* as applying only when the defendant makes a proper hearsay objection. We noted that the defendant in *Radeker* had done so and that

> "upon proper objection by the defendant, the trial court, if it admits the testimony, must make the [required findings] whether or not the defendant specifically requests the findings.... If the defendant fails to timely object to the prof-

fered testimony, the offer falls under the plain error rule rather than the *Radeker* rule."

*Id.* at 581–82 n. 3.

■ Perez contends that *Radeker* requires reversal here. Over a hearsay objection, the court allowed Pederson to testify that while he and Gonzales were looking for a jeep to purchase in late spring of 1989, Gonzales said "Oscar and him have known each other for a long time and have done a lot of business together in drugs." Rec., vol. III, at 19. Pederson was also allowed to testify over objection that Larry Jensen "had told me that he did cocaine business with Oscar Perez." *Id.*, vol. V, at 4–147. At no point in the trial did the court make findings on the record that the statements were made by co-conspirators, or that the statements were made during and in furtherance of the conspiracy.[2] Under our holding in *Radeker*, this failure constitutes reversible error.

The government recognizes that *Radeker* is dispositive here but urges us to distinguish or abandon that case, citing subsequent developments in the law of co-conspirator hearsay. In particular, the government points to the Supreme Court's decision in *Bourjaily*, 483 U.S. at 181, 107 S.Ct. at 2781, that "a court, in making a preliminary factual determination under Rule 801(d)(2)(E), may examine the hearsay statements sought to be admitted." However, the fact that the government now has a broader range of evidence available to support its invocation of Rule 801(d)(2)(E) heightens rather than reduces our concern with the " 'hazard from loose application of rules of evidence' " upon which the holding in *Radeker* was grounded. *Radeker*, 664 F.2d at 244 (quoting *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring)). Absent meaningful grounds upon which to distinguish *Radeker*, we apply it and reverse the conviction. *See United States v. Spedalieri*, 910 F.2d 707, 710 n. 3 (10th Cir.1990) ("a panel cannot overrule circuit precedent").

## III.

### SUFFICIENCY OF THE EVIDENCE

Although *Radeker* requires that we remand for a new trial, we must nonetheless address Perez's argument that the evidence is insufficient to support his conviction. If Perez is correct, retrial is barred by double jeopardy principles. *See United States v. Morris*, 612 F.2d 483, 491–92 (10th Cir.1979). We must therefore determine whether the evidence, considered most favorably to the government, is sufficient to allow a reasonable jury to find defendant guilty beyond a reasonable doubt. *Id.* at 492.

### A.

#### Conspiracy to Distribute

■ "The essence of a drug distribution conspiracy conviction is an agreement between two or more persons to traffic in controlled substances." *United States v. Horn*, 946 F.2d 738, 740 (10th Cir.1991). To prove such a conviction, the government must establish that " '(1) a conspiracy existed, (2) the defendant knew the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily became a part of it.' " *Id.* (quoting *United States v. Esparsen*, 930 F.2d 1461, 1471 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992)). The indictment here charged a conspiracy involving Perez, Gonzales, Pederson, and other persons unknown. Perez contends that the evidence was insufficient because it did

---

2. We note that the Gonzales statement was allegedly made to Pederson in the late spring of 1989, before Perez and Alfonso met to discuss the cocaine transaction underlying the charges. Perez asserts that this statement was thus made before the conspiracy began and was, in any event, mere narrative rather than in furtherance of the conspiracy. *See, e.g., United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir.) (distinguishing statements which are merely narrative from those made in furtherance of the conspiracy), *cert. denied*, 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988). We further note that the record does not reveal either the time at which the Jensen statement was made or the role, if any, that Jensen played in the conspiracy.

not establish a conspiratorial link between Gonzales and Pederson. We disagree.

"A defendant must have a general awareness of other alleged coconspirators, but is not required to be personally acquainted with all coconspirators or know all of the details of the venture." *Id.* at 741. Although the conduct of the alleged coconspirators "must be interdependent in some way," *id.* at 740, interdependence is present if the conduct of the co-conspirators "facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole," *id.* at 740–41.

As set out in Part I, supra, the evidence at trial, viewed most favorably to the government, tended to show that Pederson knew Perez was seeking cocaine to buy for other customers, and that Pederson facilitated that venture by introducing Perez to a source of cocaine, Alfonso. Gonzales likewise facilitated the venture by participating in the actual transaction and providing the cash to purchase the drug. Although Pederson may not have known that Gonzales was one of Perez's customers who was to benefit from this transaction, such knowledge is not essential. Because both Gonzales and Pederson took action which facilitated the venture as a whole, their conduct was sufficiently interdependent to support Perez's conviction on the conspiracy charged in the indictment.

### B.

### *Possession with Intent to Distribute*

Perez also challenges the sufficiency of the evidence to support his conviction on the substantive possession count. He contends the government failed to establish that one of the ten kilos was cocaine, or to establish which one of the ten kilos he actually purchased. Perez thus argues that because he could have bought the kilo which allegedly had not been shown to contain cocaine, the government had not proven guilt beyond a reasonable doubt. We have reviewed the testimony of the government's witness, who identified the ten kilos used in this transaction as cocaine. *See* rec., vol. IV, at 3–61. The argument is therefore without merit.

### IV.

### ENTRAPMENT AND OUTRAGEOUS GOVERNMENT CONDUCT

Perez also asserts that his convictions cannot stand because he was entrapped as a matter of law, and/or because his due process rights were violated by the outrageous conduct of the government. As is true with the sufficiency of the evidence claims, either of these challenges, if successful, would preclude a retrial. We therefore consider them here.

### A.

### *Entrapment*

Entrapment is established upon a showing that (1) government agents have induced the defendant to commit a crime, and (2) the defendant is not otherwise predisposed to perpetrate the offense. *United States v. Young,* 954 F.2d 614, 616 (10th Cir.1992). "[I]nducement focuses on the government's conduct while predisposition focuses on a defendant's attitude or condition." *Id.* Entrapment exists as a matter of law when the evidence on both the inducement and predisposition is uncontroverted. *Id.* Such a determination can only be made when the court need not choose between conflicting witnesses or evaluate credibility. *United States v. Dozal–Bencomo,* 952 F.2d 1246, 1250 (10th Cir.1991).

Our review of the evidence reveals that entrapment cannot be established as a matter of law. At a minimum, the evidence on the element of predisposition is in conflict. Pederson testified that Perez had indicated his need for a new source of cocaine to supply his customers before the government's informant, Alfonso, told Pederson that he had drugs to sell. We also note Perez's statement that he would bring his own drug-testing equipment to the next transaction, rec., vol. III, at 116, and the statement by an undercover agent that Pederson told him he had set up numerous drug deals with Perez, rec., vol. II, at 38, as evidence that Perez was inclined to engage in the illegal activity for which he was

charged. *See Young*, 954 F.2d at 616. Perez contends that, notwithstanding the evidence of his predisposition, he was none-theless entrapped as a matter of law be-cause his actions were motivated by threats from Alfonso directed to the safety of his ex-wife and her daughter. This argument, however, requires the evaluation of credi-bility and the weighing of conflicting testi-mony, which are functions uniquely re-served for the jury. *See Dozal–Bencomo*, 952 F.2d at 1250.

### B.

*Outrageous Government Conduct*

■ Finally, we address Perez's argu-ment that the government's investigatory conduct was so outrageous that it violated his due process rights. This defense "is manifestly reserved for only 'the most in-tolerable government conduct.'" *United States v. Warren*, 747 F.2d 1339, 1341–42 (10th Cir.1984) (quoting *United States v. Jannotti*, 673 F.2d 578, 608 (3d Cir.), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982)). "Although the due process defense purportedly ignores the de-fendant's predisposition to commit the crime charged, the defense nevertheless is concerned with the extent of government involvement in crimne and the type of op-portunity that this conduct provides to the unwitting defendant." *United States v. Gamble*, 737 F.2d 853, 858 (10th Cir.1984).

Perez supports his argument that the defense is established here by reference to the agents' decision to use a "reverse sting" operation, in which the agents posed as sellers rather than buyers. Perez con-tends this type of operation is, under the government's own policy, reserved for tar-geting upper eschelon drug dealers and there was no evidence showing that he was such a dealer. However, "[w]e have held that the government need not have a rea-sonable suspicion of wrongdoing in order to conduct an undercover investigation of a particular person." *Id.* at 860 (citing cases). Moreover, the evidence tended to establish that Perez was a willing buyer and one who desired to purchase in amounts that would place him in the upper echelon of drug dealers. The evidence we have recited elsewhere likewise undercuts

Perez's claim that his decision to purchase drugs was implanted by government agents. A due process violation is simply not demonstrated on this record.

Accordingly, we REVERSE and RE-MAND for a new trial on the basis of the improper admission of co-conspirator hear-say. We reject Perez's claims that the evidence was insufficient to support his convictions, that he was entrapped as a matter of law, and that his due process rights were violated.