UNITED STATES of America, Plaintiff–Appellee,

v.

Oscar J. PEREZ, Defendant–Appellant.

No. 90–4149.

United States Court of Appeals, Tenth Circuit.

March 30, 1993.

David F. Cunningham of White, Koch, Kelly & McCarthy, P.A., Santa Fe, NM (David L. Grindstaff, Salt Lake City, UT, on the brief), for defendant-appellant.

Wayne T. Dance, Asst. U.S. Atty. (David L. Jordan, U.S. Atty., with him on the

brief), Salt Lake City, UT, for plaintiff-appellee.

Before MCKAY, Chief Judge, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, EBEL, and KELLY, Circuit Judges.

## OPINION ON REHEARING EN BANC

SEYMOUR, Circuit Judge.

Oscar Perez was convicted by a jury of conspiring to distribute cocaine and of possessing cocaine with intent to distribute. He appealed, contending that the evidence was insufficient to support his convictions; that he was entrapped as a matter of law; that the government's outrageous conduct violated his due process rights; and that the trial court committed reversible error in admitting hearsay statements of alleged coconspirators. A panel of this court rejected all of these arguments except Mr. Perez' contention that reversible error arose from the admission of the challenged hearsay statements. *See United States v. Perez*, 959 F.2d 164 (10th Cir.1992) (*Perez I*). Applying our opinion in *United States v. Radeker*, 664 F.2d 242, 244 (10th Cir. 1981), the panel held that a new trial was required because the lower court had admitted this evidence without making the findings required to qualify the statements for admission under Fed.R.Evid. 801(d)(2)(E). *See Perez I*, 959 F.2d at 167–68.

The government petitioned for rehearing en banc, urging us to reconsider *Radeker*. We granted the petition, *see United States v. Perez*, 975 F.2d 677 (10th Cir.1992), and we now hold that the per se reversible-error rule established in *Radeker* should be modified as set out below. Accordingly, we vacate Part II of *Perez I*, 959 F.2d at 167–68, and replace it with the following discussion of the coconspirator hearsay issue. In all other respects the panel opinion is affirmed.

## I.

■ The background and development of the coconspirator hearsay rule is helpful to our analysis. As codified by the Federal Rules of Evidence, the coconspirator hearsay rule provides that an out-of-court statement by a coconspirator is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed.R.Evid. 801(d)(2)(E).

Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made "during the course and in furtherance of the conspiracy."

*Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). The offering party must prove these preliminary facts by a preponderance of the evidence. *See id.* at 176, 107 S.Ct. at 2779.

The most commonly accepted rationale for admitting this species of hearsay rests on the fiction of the agency theory of conspiracy. *See, e.g., United States v. Pallais*, 921 F.2d 684, 687–88 (7th Cir.1990), *cert. denied*, — U.S. —, 112 S.Ct. 134, 116 L.Ed.2d 101 (1991); Fed.R.Evid. 801(d)(2)(E) advisory committee's note; 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 801(d)(2)(E)[01] at 801–308 to –311 (1992) (*Weinstein's Evidence*). Under the agency theory, "each member of a conspiracy is the agent of each of the other conspirators whenever he is acting—including speaking—to promote the conspiracy (hence the requirement that the statement be in furtherance of the conspiracy)." *Pallais*, 921 F.2d at 687.

The drafters of the Model Code of Evidence in 1942 eliminated the "in furtherance" requirement, requiring only that the coconspirator statement be "relevant" to the conspiracy and made during its existence. Model Code of Evidence Rule 508(b) (1942). However, the drafters of the Federal Rules of Evidence chose to retain the traditional, more limited agency approach towards conspirators' statements "because

they adjudged it a useful device for protecting defendants from the very real dangers of unfairness posed by conspiracy prosecutions." *Weinstein's Evidence* at 801–310 (citing Levie, *Hearsay & Conspiracy*, 52 Mich.L.Rev. 1159, 1167 (1954)).

The requirements that the statement be both "during the course" and "in furtherance of" the conspiracy are therefore not only compelled by the agency fiction, they are in fact the reason why the drafters of the federal rule incorporated the agency approach into Rule 801(d)(2)(E). Thus, "Rule 801(d)(2)(E) is a *'limitation* on the admissibility of co-conspirators' statements that is meant to be taken seriously.'" *United States v. Johnson*, 927 F.2d 999, 1001 (7th Cir.1991) (quoting *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir.1989) (emphasis in original)). The "in furtherance" requirement embodies the drafters' "desire to strike a balance between the great need for conspirators' statements in combating undesirable criminal activity which is inherently secretive and difficult of proof, and the need to protect the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence." *Weinstein's Evidence* at 801–311 to –312 (footnotes omitted).

■ The drafters' decision to retain the "in furtherance" requirement in adopting Rule 801(d)(2)(E) and to reject " 'the Model Code—Uniform Rule approach [which scrapped the requirement] should be viewed as mandating a construction of the "in furtherance" requirement protective of defendants, particularly since the Advisory Committee was concerned lest relaxation of this standard lead to the admission of less reliable evidence.' " *United States v. Lang*, 589 F.2d 92, 100 (2d Cir.1978) (quoting 4 *Weinstein's Evidence* ¶ 801(d)(2)(E)[01] at 801–147 (1977)). A number of circuits have consequently construed this requirement strictly. *See e.g., United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 107, 121 L.Ed.2d 65 (1992); *Garlington v. O'Leary*, 879 F.2d 277, 283 (7th Cir.1989); *United States v. Urbanik*,

801 F.2d 692, 698 (4th Cir.1986); *but see United States v. Kocher*, 948 F.2d 483, 485 (8th Cir.1991) ("in furtherance" language to be broadly construed); *United States v. Beale*, 921 F.2d 1412, 1422 (11th Cir.) (same), *cert. denied,* —— U.S. ——, ——, 112 S.Ct. 99, 100, 116 L.Ed.2d 71, 71 (1991).

We applied the "in furtherance" test narrowly in *United States v. Wolf*, 839 F.2d 1387 (10th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988), when we held that statements are not in furtherance of the conspiracy if they are "mere narratives", that is " 'statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose,' " *id.* at 1393 (quoting 4 D. Louisell & C. Mueller, *Federal Evidence* § 427 (1980)); *see also Johnson*, 927 F.2d at 1002; *Urbanik*, 801 F.2d at 698. "Conversely, statements are admissible under the coconspirator exception if they are intended ' "to promote the conspiratorial objectives." ' " *Wolf*, 839 F.2d at 1393 (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir.1986)).

■ Examples of statements which may be found to satisfy the "in furtherance" requirement include

> statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

*Nazemian*, 948 F.2d at 529. "When inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *Id.* No talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy and is therefore admissible in accordance with the agency theory of conspiracy. *See Wolf*, 839 F.2d at 1393. To the

contrary, this determination must be made by examining the context in which the challenged statement was made. *See Weinstein's Evidence* at 801–318 to –323.

The requirement that a statement be made "during the course" of the conspiracy is likewise a product of the drafters' decision to base Rule 801(d)(2)(E) on the agency theory. The drafters thus stated their intent that the Rule be "consistent with the position of the Supreme Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved." Fed.R.Evid. 801(d)(2)(E) advisory committee's note (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949)). In *Krulewitch*, the Court rejected the government's argument that statements made after the main objective of the conspiracy had been achieved were nonetheless admissible if made to conceal the crime. *See* 336 U.S. at 442–43, 69 S.Ct. at 717–18.

The Court subsequently explained and reaffirmed its holding in *Krulewitch:*

> The crucial teaching of Krulewitch is that after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment. As was there stated, allowing such a conspiracy to conceal to be inferred or implied from mere overt acts of concealment would result in a great widening of the scope of conspiracy prosecutions, since it would extend the life of a conspiracy indefinitely. Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial agreement among the conspirators.... Sanctioning the Government's theory would for all practical purposes wipe out the statute of limitations in conspiracy cases, as well as extend indefinitely the time within

which hearsay declarations will bind co-conspirators.

*Grunewald v. United States*, 353 U.S. 391, 401–02, 77 S.Ct. 963, 972, 1 L.Ed.2d 931 (1957); *see also Dutton v. Evans*, 400 U.S. 74, 82, 91 S.Ct. 210, 216, 27 L.Ed.2d 213 (1970) ("the limited scope of the hearsay exception in federal conspiracy trials is a product ... of the Court's 'disfavor' of 'attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions.'" (quoting *Grunewald*, 353 U.S. at 404, 77 S.Ct. at 974)).

In light of the Court's expressed concern that conspiracy prosecutions not be further broadened, *see id.* at 404, 77 S.Ct. at 974, a court must carefully ascertain the nature and extent of a conspiracy in determining whether acts or statements can properly be viewed as made during its existence. *See, e.g., United States v. Serrano*, 870 F.2d 1, 8–9 (1st Cir.1989); *United States v. Vowiell*, 869 F.2d 1264, 1268–70 (9th Cir.1989); *United States v. Silverstein*, 737 F.2d 864, 867 (10th Cir.1984); *see also United States v. McKinney*, 954 F.2d 471, 475 (7th Cir.) (*Krulewitch* and *Grunewald* require court to look at scope of conspiracy in determining whether charged overt act done to effect conspiracy's objects), *cert. denied*, —— U.S. ——, 113 S.Ct. 662, 121 L.Ed.2d 587 (1992); *United States v. Fletcher*, 928 F.2d 495, 499 (2d Cir.) ("life of conspiracy cannot be extended for statute of limitations purposes by acts of concealment occurring after the conspiracy's criminal objectives have been fully accomplished"), *cert. denied*, —— U.S. ——, 112 S.Ct. 67, 116 L.Ed.2d 41 (1991). As is true with the "in furtherance" requirement discussed above, a strict construction of the "in the course of" requirement is mandated by the Supreme Court's warning against any increased broadening of the already expansive federal conspiracy law.

We recognize that the Supreme Court's most recent pronouncements in the area have reaffirmed the importance of coconspirator statements as a means of proof. Thus, in *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390

(1986), the Court indicated that such statements "are usually irreplaceable as substantive evidence" in part because they "provide evidence of the conspiracy's context that cannot be replicated." *Id.* at 395–96, 106 S.Ct. at 1126. The Court declined to impose a constitutional requirement that a declarant be unavailable before such statements would be admitted, in part because the coconspirator hearsay exception has been with us for over one-hundred years and such a rule would "automatically add[ ] another avenue of appellate review." *Id.* at 398, 106 S.Ct. at 1128. The Court has also declined to impose a rigorous standard of proof on a proponent seeking the introduction of coconspirator statements. As we have noted, the nature and extent of the conspiracy are merely preliminary questions of fact to be proven by a preponderance of the evidence (including the statements themselves), not by any higher substantive evidentiary standard. *See Bourjaily*, 483 U.S. at 175–76, 107 S.Ct. at 2778–79. Moreover, "out-of-court statements are only *presumed* unreliable," and the presumption may yield to appropriate proof. *Id.* at 179, 107 S.Ct. at 2781. Evidence which may be unreliable in isolation may be probative when corroborated by other evidence. *Id.* at 179–80, 107 S.Ct. at 2780–81. Finally, our review of the district court's findings on whether statements are made "during the course and in furtherance of the conspiracy" is limited; we may set such preliminary findings aside only if they are clearly erroneous. *Id.* at 181, 107 S.Ct. at 2781.

## II.

In the instant case, Mr. Perez contends that two hearsay statements concerning his uncharged alleged drug activity were erroneously admitted under Rule 801(d)(2)(E). Over a hearsay objection, the court allowed Robert Pederson, one of the alleged coconspirators, to testify that while he and another alleged coconspirator, Paul Gonzales, were looking for a jeep to purchase in late spring of 1989,[1] Gonzales said "Oscar [Per-

ez] and him have known each other for a long time and have done a lot of business together in drugs." Rec., vol. III, at 19. Pederson was also allowed to testify over objection that Larry Jensen, identified at trial only as a mutual friend of Mr. Perez and an informant, had told Pederson at an unidentified time "that he did cocaine business with Oscar Perez." *Id.*, vol. V, at 4–147. *See Perez I*, 959 F.2d at 168 & n. 2. The district court made no findings regarding whether either of these statements was made during the course of or in furtherance of the alleged conspiracy.

In determining how to apply the principles set out above to Mr. Perez' claim, we must first consider the procedural posture in which this issue is presented. Mr. Perez raised a hearsay objection to both of the challenged statements, but neither he nor the government requested the trial court to make the findings required by Rule 801(d)(2)(E). Mr. Perez' failure to request the findings, however, does not bar him from raising on appeal the failure of the district court to make them. The party seeking to introduce hearsay testimony under this Rule bears the burden of proving the relevant preliminary facts. *See Bourjaily*, 483 U.S. at 176, 107 S.Ct. at 2779 (1987). In *Radeker*, 664 F.2d at 244, we held that the government, as the proponent of the evidence, also has the responsibility to ensure that the district court's findings as to these preliminary facts are made on the record. Because it is the government who will benefit from the admission of otherwise excludable evidence, and because the admissibility of coconspirator hearsay is based on a fiction that favors the government in any event, we are persuaded that *Radeker* properly places the duty to request the requisite finding on the government. Consequently, a defendant who makes a hearsay objection has done all he need do to preserve for appeal the failure of the district court to make the required coconspirator findings.

Mr. Perez contends that the district court committed both a procedural error by fail-

---

**1.** The indictment charged a conspiracy from "a date unknown but at least by about August 29, 1989 ... until November 1, 1989." Rec., vol. I, doc. 1.

ing to make the requisite findings on the record, and a substantive error by admitting hearsay statements that were not in fact in the course and in furtherance of the charged conspiracy. He further contends that this evidence was highly prejudicial to his ability to present an entrapment defense.

■ We held in *Radeker* that a conviction must be reversed if the trial court admits hearsay statements by alleged coconspirators "over a hearsay objection without making the requisite findings on the record, even when the defendant does not specifically request them." 959 F.2d at 167. The panel in the present case focused only on the trial court's failure to make findings on the record because it was dispositive of the hearsay challenge under *Radeker*. We now conclude that the per se reversal rule of *Radeker*, while furthering the Supreme Court's mandate that conspiracy evidence be carefully scrutinized, requires an unnecessary expenditure of judicial resources and fails to accommodate the possibility of harmless error, *see generally Arizona v. Fulminante*, — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). We are convinced that the concerns underlying *Radeker* can be implemented equally effectively by the procedure which we discuss below.

■ For reasons that follow, the procedure which we believe best balances the competing interests inherent in a case such as this was set out in *United States v. Mahar*, 801 F.2d 1477, 1503–04 (6th Cir. 1986), and substantially followed in *United States v. Lai*, 944 F.2d 1434, 1444–45 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992). In *Mahar*, as here, the trial court admitted coconspirator hearsay without making the preliminary findings. The court of appeals held that "[t]he court's failure to make the required ... finding, a responsibility that devolved on the court, was clearly an abuse of discretion." *Mahar*, 801 F.2d at 1495.

To remedy this abuse, the appellate court employed the following analysis. It first assumed that the challenged statements were inadmissible, and then assessed whether their admission was harmless beyond a reasonable doubt.[2] *Id.* at 1504. Upon concluding that the admission was not harmless, the court remanded the case to the trial judge to conduct the inquiry and make the findings that should have been made under Rule 801(d)(2)(E). In so doing, the court stated that if the trial judge determined on remand that the statements were made in the course and in furtherance of the conspiracy, the convictions would stand and the court of appeals would retain jurisdiction to review the lower court's determination on the issue. If, on the other hand, the trial court determined that Rule 801(d)(2)(E) was not satisfied, it would set the convictions aside and conduct a new trial because the court of appeals had already concluded that the admission was not harmless.

This framework has several beneficial features. It encourages evaluation during the trial of the facts offered by the government to support Rule 801(d)(2)(E) admissibility, and insures that the evaluation will be made at some point by the trial court unless the evidence meets the harmless error standard. Conversely, this procedure does not waste valuable judicial resources by remanding for further consideration by the trial court of evidence the admission of which was harmless even if improper.

The per se reversal holding in *Radeker* has been criticized as encouraging "litigants, in some cases where the evidence supports the admissibility of the extra-judicial statements, to strategically omit a specific [request for Rule 801(d)(2)(E) findings] in order to get an 'automatic' reversal." *United States v. Machor*, 879 F.2d 945, 950 (1st Cir.1989), *cert. denied*, 493 U.S. 1081, 1094, 110 S.Ct. 1138, 1167, 107 L.Ed.2d 1043, 1070 (1990). The procedure we set

---

2. Although the court in *Mahar* used the constitutional harmless error test enunciated in *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) (harmless beyond a reasonable doubt), we conclude infra that the appropriate test is the nonconstitutional harmless error test where the defendant makes an objection under the hearsay evidence rules but not under the Confrontation Clause of the Sixth Amendment.

out today should eliminate this concern. When a trial court fails to make record findings *and* we cannot view the admission as harmless, the case will be remanded for an inquiry in the first instance by the trial court on the Rule 801(d)(2)(E) factors. This is a determination to which the defendant is clearly entitled. Only if the trial court finds on remand that the factors have not been established does the defendant receive a new trial.

■ Finally, this procedure does not entangle the court of appeals in the questionable process of first presuming that the trial judge made implicit findings, and then searching the record on appeal for evidence that the trial court might have relied upon to support the findings. As the Supreme Court noted in *Bourjaily*, 483 U.S. at 175, 107 S.Ct. at 2778, "the existence of a conspiracy and [defendant's] involvement in it are preliminary questions of fact that, under Rule 104 [of the Federal Rules of Evidence], must be resolved by the [trial] court." And as the court in *Mahar* pointed out, "[a]n appellate court is not the proper forum to conduct the needed factual hearing." *Id.* at 1503. In many cases, the trial court allows coconspirator hearsay into evidence before the requisite facts have been established in reliance upon the government's representation that such proof will be forthcoming later in the trial. *See e.g., United States v. Reyes*, 798 F.2d 380, 384 (10th Cir.1986). In such circumstances, we could not infer that the court made the requisite findings at the time the hearsay was admitted because the supporting evidence had not yet been presented. When the court does not make these findings after the government puts on its case, we cannot be certain that the court ever actually evaluated the subsequent evidence and ascertained that the Rule 801(d)(2)(E) requirements were satisfied. There is a critical difference between determining on appeal that factfindings which were actually made below are supported by the record, and making factfindings on appeal because they *could be* supported by the record. *See generally United States v. Williams*, 951 F.2d 1287 (D.C.Cir.1991). This is particularly true in those cases requiring an assessment of coconspirator hearsay, which by its nature usually involves disputed facts, as well as issues of credibility and bias.[3]

■ Applying the first step in this procedure, we would ordinarily turn to an assessment of whether the hearsay statements admitted in violation of Rule 801(d)(2)(E) can be considered harmless. *See* Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."). Here, however, Mr. Perez also contends that the Confrontation Clause of the Sixth Amendment was violated by the improper admission of the two hearsay statements, although he objected at trial solely on the grounds of hearsay. For the reasons we fully explained in *United States v. Jefferson*, 925 F.2d 1242, 1254 (10th Cir.1991), where a Confrontation Clause objection is not explicitly made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional issue *sua sponte*. If we are left to review only a hearsay objection, we review that issue under the nonconstitutional harmless error standard.[4]

3. We do not rule out the possibility that a case could arise in which the record demonstrates without any question that the trial court did make the requisite inquiry even though no formal findings appear. It is also possible that the evidence establishing admissibility would be without doubt sufficient, unimpeachable, and uncontroverted, so that no credibility or factual determination would be required. In either event, a remand would not be necessary.

4. Judge Seymour, joined by Chief Judge McKay, writes separately in this footnote to respectfully dissent from the majority's conclusion that we should apply only the nonconstitutional harmless error test absent a Confrontation Clause objection. We would hold that in the context of this case, where we are assuming that the trial court erred in admitting the two hearsay statements under Rule 801(d)(2)(E), we should apply the constitutional harmless error rule to assess the impact of the error. *See United States v. Cross*, 928 F.2d 1030, 1051–52 (11th Cir.1991); *United States v. Vowiell*, 869 F.2d 1264, 1270 (9th Cir.1989); *United States v. Mahar*, 801 F.2d 1477, 1504 (6th Cir.1986). We concur in the outcome of this case, however, because even

*See United States v. Lai,* 944 F.2d 1434, 1444–45 (9th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992); *United States v. Burton,* 937 F.2d 324, 329 (7th Cir.1991); *United States v. Arvanitis,* 902 F.2d 489, 500–01 (7th Cir. 1990); *United States v. Urbanik,* 801 F.2d 692, 698–99 (4th Cir.1986); *United States v. Brown,* 692 F.2d 345, 350–51 (5th Cir. 1982). *Cf. United States v. Montoya,* 967 F.2d 1, 2 (1st Cir.) (holding defendant's hearsay objection at sentencing hearing insufficient to preserve Confrontation Clause objection, which was therefore waived), *cert. denied,* — U.S. ——, 113 S.Ct. 507, 121 L.Ed.2d 442 (1992). Before turning to the harmless error analysis for the ruling under Rule 801(d)(2)(E), we address the Confrontation Clause claim to see if it was plain error for the district court not to have raised that issue on its own.

▮ To constitute plain error under the Confrontation Clause, the *constitutional* error must be (1) obvious, and (2) "affect[ ] substantial rights." Fed.R.Crim.P. 52(b). We stated the rule succinctly in *United States v. Mitcheltree,* 940 F.2d 1329, 1334 (10th Cir.1991):

> To find reversible plain error, we must be satisfied that the error not only affected substantial rights in a serious way, but also that the "error had an unfair prejudicial impact on the jury's deliberations." [*United States v. Young,* 470 U.S. 1, 16–17 n. 14, 105 S.Ct. 1038, 1046–1047 n. 14, 84 L.Ed.2d 1 (1985) ]. "Only then would a court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice." *Id.*
> . . .
> An error of constitutional significance may be "noticed more freely than less serious errors." *See* 3A C. Wright, *Federal Practice & Procedure* § 856 at 336, 342 (1982 & 1990 Supp.); *Jefferson,* 925 F.2d at 1254. Notwithstanding, many constitutional errors are "not prejudicial per se." 8B J. Moore, *Moore's Federal*

*Practice* ¶ 52.03 (1990). Rather, under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), many constitutional errors may be deemed harmless and not reversible when a reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." *See also United States v. Rivera,* 900 F.2d 1462, 1469–70 (10th Cir.1990) (en banc) (discussing differing standards of review for nonconstitutional and constitutional claims).

*Id.* (footnote omitted).

▮ In assessing whether plain constitutional error occurred in this case, we need not address here the first prong of the test which asks whether the Confrontation Clause error, if any, was obvious because we conclude that Mr. Perez fails to satisfy the second prong of the plain error analysis. Under the second prong, Mr. Perez was required to establish that the introduction of these coconspirators' statements undermined the fairness of the trial or contributed to a miscarriage of justice. We have carefully reviewed the record and we are persuaded that the admission of the two hearsay statements, even if improper under the Confrontation Clause, did not affect his substantial rights. Thus, Mr. Perez has failed to establish that it was plain error for the district court to fail to raise a Confrontation Clause objection to this evidence sua sponte, and consequently we do not consider the constitutional claim further.

▮ The harmless error analysis of the alleged violation of Rule 801(d)(2)(E) proceeds under the nonconstitutional standard of *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), which asks whether the error had a "substantial influence" on the outcome of the trial. Our review of the evidence leads us to the conclusion that the violation of Rule 801(d)(2)(E) did not have a "substantial influence" on the outcome of the trial, and hence the hearsay error was harmless.

applying the constitutional harmless error standard, we conclude that the error here was harmless beyond a reasonable doubt.

The evidence of Mr. Perez' guilt in the charged offenses is overwhelming. The government presented numerous statements by Mr. Perez made to undercover agents in person and through taped telephone conversations, played for the jury, in which Mr. Perez discussed cocaine distribution and negotiated a drug deal with the agents, who were posing as suppliers. The actual drug transaction in which Mr. Perez and coconspirator Paul Gonzales tested ten kilos of cocaine and selected one to purchase was videotaped and played for the jury.

Mr. Perez contended at trial that his participation in the above conduct was the result of threats against his ex-wife and her daughter made by Paul Alfonso. Mr. Perez testified that Pederson introduced Alfonso to him at Pederson's work place, and immediately thereafter Alfonso, whom Mr. Perez had never met before, told Mr. Perez that he, Alfonso, owed a lot of money to drug dealers and he would kill Mr. Perez' ex-wife and her daughter if Mr. Perez did not find buyers for the drugs Alfonso had to sell. In fact, Alfonso was working with the undercover agents who posed as drug suppliers. Mr. Perez asserts on appeal that the hearsay statements, which referred to other drug activity in which Mr. Perez had participated, were prejudicial because they tended to show that he was predisposed to engage in illegal drug transactions and undermined his claim that he was entrapped and/or motivated solely by Alfonso's threats.

Although this argument gives us pause, our review of the record reveals overwhelming evidence that Mr. Perez was predisposed to engage in the drug activity for which he was convicted. Most significantly, Robert Pederson, the indicted coconspirator who introduced Mr. Perez and Alfonso, testified that Mr. Perez had indicated his need for a new source for his drug customers *before* Alfonso told Pederson that he had drugs to sell. An undercover agent testified that Pederson had described setting up numerous drug deals with Mr. Perez, and that Mr. Perez insisted on personally inspecting all cocaine prior to any transactions. Finally, we note the statement of Mr. Perez during the videotaped drug deal that next time he would bring his own drug-testing equipment, and Pederson's testimony at trial that Mr. Perez had shown him his drug-testing machine. Although Mr. Perez asserted below that he made these incriminating statements only to play the role Alfonso wanted, many of the statements were made when they could not have come to Alfonso's attention. Given this evidence of predisposition, and the weakness of Mr. Perez' claim that a stranger threatened to kill his ex-wife and her child if he refused to find a drug buyer, we are convinced that there is no reasonable possibility the two statements at issue might have contributed to the conviction.

Because we have determined that the district court's error was harmless, we need not remand this case to the trial court to make the Rule 801(d)(2)(E) findings.

The conviction is AFFIRMED.