F I L E D
United States Court of Appeals
Tenth Circuit

MAR 2 2000

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

GARY JACK HOLLIS, JR.,

      Defendant - Appellant.

No. 99-3233
(D.C. No. 98-CR-40024-2-DES)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **KELLY**, and **MURPHY**, Circuit Judges.[**]

Defendant-appellant Jack Hollis appeals from his conviction for one count

of conspiracy to manufacture methamphetamine, 21 U.S.C. § 846, and two counts

of manufacture of methamphetamine, 21 U.S.C. § 841(a)(1). He was sentenced to

262 months on each count, terms to run concurrently, followed by five years of

supervised release. Mr. Hollis raises two issues on appeal. First, he argues that

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause is therefore ordered submitted without oral argument.

the trial court erred in granting the government's motion in limine, excluding evidence that criminal charges were pending against Sergeant Robert Thomas, a key witness for the prosecution. Mr. Hollis claims that his inability to fully cross-examine Sgt. Thomas was a violation of the Confrontation Clause of the Sixth Amendment, or in the alternative, an abuse of the trial court's discretion. Second, Mr. Hollis alleges that the evidence was insufficient to support his conviction for conspiracy to manufacture methamphetamine. We affirm.

Sergeant Thomas was one of several officers involved in searching Mr. Hollis' residence on two separate occasions. At the time of trial, Sgt. Thomas had several criminal charges pending against him, including charges of theft and tampering with evidence in another drug related search. II R. at 5. The government brought a motion in limine to exclude this evidence, arguing that criminal charges, as opposed to final convictions, should not be admitted. Mr. Hollis argued that the charges were "relevant concerning the 404(b) motive, intent, opportunity and knowledge." Id. at 6. The trial court granted the motion.

At trial, Mr. Hollis did not raise a constitutional objection to the government's efforts to exclude evidence of the pending charges. "[W]here a Confrontation Clause objection is not explicitly made below we will not address the constitutional issue in the absence of a conclusion that it was plain error for the district court to fail to raise the constitutional issue sua sponte." United

States v. Perez, 989 F.2d 1574, 1582 (10th Cir. 1993). For plain error, the defendant must prove that the constitutional error was both obvious and affected substantial rights. See id. at 1583. Mr. Hollis points out that Sgt. Thomas was the primary witness for the government and was a key participant in both searches.

However, these facts do not show that the alleged constitutional error was obvious, or indeed that there was any error at all. The right to cross-examine witnesses is not absolute.

> It does not follow . . . that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecutorial witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Since the mere pendency of charges against a witness is not a valid basis for impeachment, it was not obvious error for the district court to exclude evidence of the charges against Sgt. Thomas under the Confrontation Clause. "Therefore, we will apply the nonconstitutional standard of review to the facts of this case." United States v. Jefferson, 925 F.2d 1242, 1255 (10th Cir. 1991).

Under the nonconstitutional standard, Mr. Hollis must prove both that the

trial court abused its discretion and that the resulting error was not harmless. An error is harmless and must be disregarded if it "does not affect substantial rights." Fed. R. Crim. P. 52(a). We review the record de novo and determine that any error the trial court may have committed in limiting the scope of cross examination of Sgt. Thomas was harmless, see United States v. Hanzlicek, 187 F.3d 1228, 1237 (10th Cir. 1999), if for no other reason than the fact that evidence of an accusation, without more, is not proper impeachment. Consequently, there was no error. See Michelson v. United States, 335 U.S. 469, 482 (1948).

Mr. Hollis also challenges the sufficiency of the evidence to support his conviction for conspiracy to manufacture methamphetamine, 21 U.S.C. § 846. We review de novo, asking whether the evidence, when viewed in the light most favorable to the government, was sufficient for a reasonable jury to find all the essential elements of the crime beyond a reasonable doubt. See United States v. Wiseman, 172 F.3d 1196, 1212 (10th Cir. 1999). The government must prove three elements for a conspiracy conviction: "(1) a conspiracy existed, (2) the defendant knew the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily became a part of it." United States v. Nicholson, 983 F.2d 983, 989 (10th Cir. 1993) (citation and internal quotations omitted).

The evidence in this case is clearly sufficient to sustain a conviction for

conspiracy.  First, other conspirators met at Mr. Hollis' house to discuss and transfer money for the purchase of iodine crystals.  Before two of the conspirators left to buy the iodine, Mr. Hollis made a bet with one of them as to whether they could return within four hours.  When the conspirators returned, they gave the iodine to Mr. Hollis to transport to Wayne Getman, the leader of the conspiracy.  The iodine ended up at Getman's and Mr. Hollis was present at Getman's house throughout the night when a methamphetamine cook took place.  In the morning, Mr. Hollis tested the methamphetamine by "shooting up" and then informed Getman how much "cut" he felt the mixture required.  II R. at 458.

There was further testimony that Mr. Hollis was Getman's "right-hand man," II R. at 308, 410, and that he had been observed participating in the process of manufacturing methamphetamine.  II R. at 414.  Cumulatively, this evidence is sufficient to sustain the conviction.

AFFIRMED.

Entered for the Court

Paul J. Kelly, Jr.
Circuit Judge